## TEXAS & P. RY. CO. v. EDWARDS et al. (No. 2318.)

Court of Civil Appeals of Texas. El Paso.
Oct. 24, 1929.

Rehearing Denied Nov. 21, 1929.

T. D. Gresham, of Dallas, Douthit, Mays & Perkins, of Sweetwater, and J. M. Caldwell, of Midland, for appellant.

Beall, Beall & Beall, of Sweetwater, for appellees.

PELPHREY, C. J. Appellees Will P. Edwards and W. H. Hightower brought this suit against appellant for damages to a herd of cattle belonging to them, alleged to have occurred at a railroad crossing adjacent to the town of Midland, Midland county, Tex.

They alleged that appellant's train ran into the said herd while they were on the crossing, killing 30 and injuring 97 head. The grounds of negligence alleged against appellant were: Running the train at a high and dangerous rate of speed as it approached said crossing; failure to sound the whistle and ring the bell; failure to have a fence adjacent to said crossing in repair; failure to keep a proper lookout as the train approached the crossing; failure to stop or slacken the speed of the train after seeing the cattle on the crossing; and discovered peril.

Appellant answered by a general demurrer, special exceptions, a general denial, and contributory negligence on the part of appellants, their agents, servants and employees, in the following particulars: Failure to keep proper lookout on approaching the crossing; failure to keep proper lookout as the cattle reached the crossing; failure to keep proper lookout while the cattle were crossing; failure to listen for the approach of trains while cattle were crossing; failure to listen for trains at the time cattle reached the crossing; failure to have a sufficient number of men at the crossing to keep the cattle off the track on the approach of the train; failure to remove the cattle from the crossing upon discovery of the approach of the train; failure to drive the cattle off the crossing, after, by the exercise of ordinary care, they should have discovered the approach of the train; and failure to ascertain from appellant's agent the time trains would pass over the crossing before attempting to move the cattle across same.

Under the general denial, the court in its charge also submitted the question of unavoidable accident.

The case was submitted on special issues, and in response thereto the jury found: That the train approached the crossing at a high and dangerous rate of speed, and that such act was negligence and a proximate cause of the injury; that appellant's agents did not fail to ring the bell and blow the whistle; that appellant had permitted the fence adjacent to the crossing to get down and out of repair; that such act was negligence and a proximate cause of the injury; that, by the use of ordinary care, appellant's agents could have seen the cattle crossing the track in time to have avoided injuring the cattle; that they failed to use ordinary care to see the cattle in time to avoid injuring them, and such failure to use ordinary care was a proximate cause of the injury; that appellant's servants did not in fact see the cattle in time to have stopped or slackened the speed of the train so as to avoid the injury; that appellant's agents saw the cattle upon the crossing before striking them, but that they did not see them in time to have prevented striking them; that the agents of appellant saw and realized that the cattle were in danger of being injured by the train; that 30 head of cattle were lost to appellees by the train striking them, and that their market value was $42.50 per head; that 97 head were injured to the extent of $485; that appellees and their servants kept a proper lookout on approaching, upon reaching, and while the cattle were passing over, the crossing; that they used ordinary care in listening for the approach of the train on reaching the crossing and while crossing the track; that appellees did not fail to use ordinary care to have a sufficient number of men stationed at the crossing to keep the cattle off the track on the approach of the train; that appellees and their servants did not fail to use ordinary care to drive the cattle off the

track after discovering the approach of the train; that the collision of the train with the cattle was not the result of an unavoidable accident; that appellees did not fail to exercise ordinary care to drive the cattle off the track after seeing the train, or when by the use of ordinary care they should have seen it; and that appellees were not negligent in failing to ascertain from appellant's agent the time when trains would approach the crossing before attempting to cross the cattle.

Upon the above answers, the court rendered judgment in favor of Edwards and Hightower for $1,760, and the railway company appeals.

## Opinion.

Appellant's assignments of error Nos. 1, 2, and 8 complain of the argument of counsel for appellees.

■ By the bills of exceptions it is shown that James H. Beall, Jr., in his opening address to the jury, used the following language: "The plaintiff cannot hope to recover from the defendants if the plaintiffs have been guilty of contributory negligence;" and at another time said: "The issues of contributory negligence submitted in the court charge are defendant's issues, and that W. W. Beall, of counsel for appellees, made this statement to the jury: 'The plaintiff cannot expect to recover anything from the defendant if you answer special issue number nine in the affirmative;'" and, upon objection being made and overruled, he made the further statement: "I repeat that plaintiff cannot recover from the defendant in the event you answer special issue number Nine in the affirmative."

Special issue No. 9 was one of the issues on contributory negligence. Ordinarily it is reversible error for counsel to tell the jury the legal effect of their answers to special issues, but such does not appear to be the rule when the effect of the remarks is only to apprise the jury of a fact which they already know. Railway Company v. Harling (Tex. Com. App.) 260 S. W. 1016; McFaddin v. Hebert et al. (Tex. Com. App.) 15 S.W.(2d) 213.

Upon the authority of the above decisions we overrule these assignments.

■ As heretofore stated, the court submitted an issue as to whether the collision of defendant's train with plaintiffs' cattle was an unavoidable accident, and in connection therewith instructed the jury that the burden of proof was upon defendant to establish, by a preponderance of the evidence, the affirmative of the issue.

In Traction Co. v. Armour & Co. (Tex. Civ. App.) 290 S. W. 544, and Traction Co. v. Craig (Tex. Civ. App.) 250 S. W. 733, we find the court holding that only in cases where the evidence shows that the collision resulted from some unknown cause, or in a manner which cannot be explained, or by reason of circumstances different from those relied upon by

the parties as constituting negligence of the defendant or contributory negligence of plaintiff, or the combined negligence of both, should the issue of unavoidable accident be submitted to the jury.

■ Applying that rule to the facts of the case at bar, we are of opinion that the issue of unavoidable accident was erroneously submitted. If we are correct in that conclusion, then the instruction as to the burden of proof on such issue, if error, was harmless.

■ The court in its main charge submitted the following special issue: "In what amount do you find said cattle were injured in their reasonable market value, if anything? Answer in dollars and cents." This issue was submitted as to the cattle it was alleged had been injured by becoming frightened, and running over each other, fences, and other objects. Appellant objected to the submission of the issue on the ground that it failed to set forth the correct legal measure of damages, and did not give the jury any rule or guide by which to answer the issue.

■ It is unquestionably true that ordinarily in damage suits it is the duty of the court to give to the jury the proper rule by which they are to be governed in the assessment of damages. Texas Nursery Co. v. Knight et al. (Tex. Civ. App.) 292 S. W. 588, and cases cited, yet it is equally true that cases should not be reversed by appellate courts, unless it be made to appear that the error complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

The evidence in this case shows that the herd of cattle had a market value of from $40 to $45 per head, and that any cut backs would be worth $35 per head. The only evidence upon which the jury could have made a finding as to the value of the injured cattle after the collision was the testimony of Sam Preston that their value was $25 per head.

Assuming for the sake of argument that the injured cattle would have been cut back out of the original herd, then we find from the evidence that their market value before the injury was $35 per head, and their market value afterwards was only $25 per head, a difference of $10 per head. The jury found that there were 97 head of the cattle injured, and that they were injured in their reasonable market price in the sum of $495, or $5 per head.

■ The facts show that appellant was not harmed by the court's failure to instruct the jury, and appellant has not shown us that any improper judgment against him resulted from the court's action. The assignment is therefore overruled. Nor do we agree with appellant's contention that the failure of the court to confine the number of cattle frightened to those that were negligently fright-

ened by appellant, in special issue No. 8, was reversible error.

Plaintiffs alleged in their petition that the cattle were frightened and caused. to stampede by the train running into the herd, and defendant did not plead any facts nor does the evidence show that they became frightened from any other cause. It is undisputed that the herd was in the act of crossing the track of appellant when the train collided with them, and the jury found that the collision was a result of defendant's negligence. In this state of the record we fail to see how appellant was harmed by the court's failure to limit the issue as requested.

■■ W. H. Hightower, one of appellees, testified as to the number of men stationed by appellees at the crossing and as to the sufficiency of the number to properly handle the cattle; that the speed of the train was a mile a minute; and that he had sold the cattle to Price Bros. at $42.50 per head, with the right to cut back 10 per cent. These statements were objected to by appellant, and their admission is assigned as error in assignments Nos. 9, 10, and 12.

It is our opinion that Hightower, being an experienced cowman, was qualified to express his opinion as to how many men were sufficient to handle a herd such as appellees were shipping under the circumstances. Whether we be correct in such holding or not, the evidence as to the ·sufficiency of the number of men was in the record from other witnesses without objection, and was therefore harmless.

■ That Hightower was qualified to testify as to the speed of the train and that the admission of the testimony was not reversible error, see Merchants' Transfer Co. v. Wilkinson (Tex. Civ. App.) 219 S. W. 891, and Railway Company v. Sullivan (Tex. Civ. App.) 42 S. W. 569.

■ Ordinarily, Hightower's testimony that he had sold the cattle to Price Bros. at $42.50 per head would be inadmissible, but in this case, where the evidence shows the market value of the cattle to have been from $45 to $47 per head, such testimony loses its harmful effect, and will not cause a reversal of the case. We think the same is true as to the evidence of Hightower and Preston as to their agreement in reference to the cut-back cattle.

The jury found that 30 head of appellees' cattle were killed, and that their market value was $42.50 per head. Appellant contends that the evidence is insufficient to support this finding, for the reason, as it claims, there were at least 100 head of cattle in the herd that were of the value of from $32.50 to $35 per head, and that the evidence fails to show whether any of the cut backs were among those killed or whether they were all cut backs. We do not so construe the testimony.

While it is true that Price Bros. had bought the cattle with the privilege of a 10 per cent. cut back, that merely meant, as we understand it, that Price Bros. had agreed to buy the herd at $42.50 per head, but reserved the right when the cattle were delivered to cut back any of the cattle they did not want at that price, not to exceed 10 per cent. of the whole herd. That does not necessarily mean that they would have refused to take 100 head out of the herd. Under their agreement, the cattle were all $42.50 cattle until such time as Price Bros. exercised their cut back right by indicating the cattle which they did not wish to purchase at the contract price.

Whether or not there would have been any cattle cut back by Price Bros., if the collision had not occurred, it is humanly impossible to say, for the contingency which would have made part of the herd cut backs never arose. The fact that Price Bros. did exercise their cut-back privilege later does not, in our opinion, have any bearing on the question. The record shows that they rejected 97 head, not because they failed to measure up to the standard fixed by Price Bros., but because they were not worth the contract price because of injuries received in the stampede.

■ The evidence shows that the reasonable market value of the herd was from $45 to $47 per head, and we do not think that the fact that Price Bros. had a right to reject any number of head not to exceed 10 per cent. at the price of $42.50 in any way changes that value.

We have given careful consideration to all of the questions presented, and find no error which in our judgment calls for a reversal of the case.

The case is therefore affirmed.