## C. W. HAHL CO. v. BURCH.
### No. 2648.

Court of Civil Appeals of Texas. Beaumont.

Oct. 6, 1934.

Rehearing Denied Oct. 17, 1934.

Perkins & Floyd, of Alice, and L. B. Moody, of Houston, for appellant.

Lloyd & Lloyd, of Alice, for appellee.

WALKER, Chief Justice.

By warranty deed dated November 1, 1923, though executed about July 18, 1924, recorded July, 1924, appellant, C. W. Hahl Co., conveyed to appellee, Joshua Burch, 160 acres of land in Duval county, containing the following reservation for the benefit of the grantor: "It is expressly understood and agreed that this conveyance is subject to that certain oil and gas lease dated December 27th, 1922, in favor of F. V. Faulkner and that C. W. Hahl Company reserves to itself ½ of the royalty and rentals provided therein and in the event of the cancellation, lapse or abandonment of said lease, said C. W. Hahl Company reserves to itself 1/16 of the oil and minerals in and to said land for ten years from date hereof or as long thereafter as oil or other minerals are being produced on said land."

This land was conveyed to Burch by virtue of a written contract of sale, entered into by and between him and appellant, dated November 1, 1923. This suit was filed by appellee against appellant on the 6th day of December, 1932, to cancel the reservation in the above-described deed. For ground of relief, appellee pleaded as follows, summary taken from his brief: "That Appellee first purchased land out of Section 46; that he exchanged it for land in Section 43, which he and his son acquired under contract that had no rider thereto or reservation of minerals therein; that they purchased· the land un- der representations that it would be subject to an oil lease but that they would get all the royalty and benefits thereunder; that they relied implicitly on the representations of C. W. Hahl Company, its agents and employees; that they entered upon said land, believing they acquired the fee title thereto, subject only to the oil lease, and made valuable improvements thereon; that the Company subsequently mailed to them a deed containing a reservation of certain mineral rights, which they refused to accept and which was returned; that the Company forwarded another deed to the County Clerk for recording instead of to Appellee and his son for their approval; that this deed was recorded and later delivered to them; that Appellee and his son inquired of Appellant whether all of the mineral rights, except the lease, were owned by them and whether this second deed had eliminated the former reservation; that Appellant, its agents and employees, represented to and assured Appellee and his son that the objectionable reservation has been eliminated and that they owned all the mineral rights under the land, except for the oil lease; that they had confidence in Appellant, its agents and employees; that they relied upon such representations; that Appellee acquired the interest of his son in the land by deed; that neither he nor his son learned of the fraud perpetrated until September, 1932, when he went to sell some royalty; that a deed of trust had been given and the purchase money notes were extended, but neither mentioned any mineral reservations; that he made the improvements, paid some purchase money and executed the various papers relying upon aforesaid representations of Appellant; that Appellant concealed the real facts from Appellee, who was unlearned, had no attorneys or other person to represent him in the various transactions, and would not have accepted the deed had he known the real meaning of the language of the deed. Appellee prayed for judgment for the title to the land, the oil and minerals thereunder, for the removal of the clouds on his title thereto by Appellant's claims and for general relief."

Appellant's answer consisted of a general demurrer, a general denial, a disclaimer of all interest in the land, except the royalty interest in controversy and the lien for unpaid purchase-money notes, a plea of not guilty, and the statute of limitation of four years. The case was submitted to the jury upon the following special issues answered as indicated:

"Special Issue No. 1. Did the contract dated November 1, 1923 between Joshua Burch, Isaiah Burch and the C. W. Hahl Company have attached to it at the time it was signed by Joshua and Isaiah Burch, a piece of paper called a 'rider' which contained a reservation to C. W. Hahl Company of one-half of the royalty and or one-sixteenth of the oil and minerals on the land?

"Answer 'Yes' or 'No.'

"We, the Jury, answer No.

"Special Issue No. 2. When did Joshua Burch discover and understand that the deed from the C. W. Hahl Company to him and Isaiah Burch contained a reservation of one-half of the oil royalty under the lease to the Magnolia Petroleum Company, and or one-sixteenth of the oil and minerals for ten years from the date thereof, or as long thereafter as oil or other minerals are being produced on said land? Answer, giving the date.

"We the jury answer: 'He discovered it on or about Sept. 1932.' "

"Special Issue No. 3. Do you find from a preponderance of the evidence that C. W. Hahl Company, its agents or employees, after the delivery of the deed dated November 1st, 1923, to Joshua and Isaiah Burch, represented to said Joshua and Isaiah Burch that the deed conveyed the land therein described subject only to the oil and gas lease then outstanding, thereon, in favor of the Magnolia Petroleum Company, and subject to one-half of the rentals payable by said Company under such lease?

"Answer: 'Yes' or 'No.'

"We, the Jury, answer Yes.

"If you have answered 'yes' to the foregoing Special Issue No. 3, then you will answer this issue; but if you have answered 'no,' to the next preceding Special Issue, then you will not answer this issue.

"Special Issue No. 4. Do you find from a preponderance of the evidence that Joshua and Isaiah Burch in good faith relied upon the representations of C. W. Hahl Company, its agents or employees, to the effect that the deed dated November 1st, 1923, conveyed the land therein described subject only to the oil and gas lease then outstanding thereon in favor of the Magnolia Petroleum Company, and to one-half of the rentals payable by said Company under such lease. You will answer this special issue 'yes' or 'no.'

"We the Jury, answer, Yes.

"If you have answered Special Issues Nos. 3 and 4 next above 'Yes,' then you will answer this issue; but, if you have answered them, or either of them, 'no,' then you will answer this issue No. 5.

"Special Issue No. 5. State from a preponderance of the evidence when Joshua Burch discovered, or by the exercise of reasonable diligence could have discovered, that the representations inquired about in special issue No. 3, were untrue, and that the deed dated November 1st, 1923, did in truth and in fact reserve one-sixteenth of the royalty and mineral rights under the land in question? Answer this question, giving the date.

"We, the Jury, Answer 'That he discovered it, or with reasonable diligence could have discovered it, on or about Sept. 1932.' "

On the verdict judgment was entered for appellee for the relief prayed for, from which the appeal was regularly prosecuted to the San Antonio Court of Civil Appeals, then transferred to this court by orders of the Supreme Court.

■ All assignments attacking the findings of the jury as being without support in the evidence and against the preponderance of the evidence are overruled. The verdict of the jury followed literally the testimony of appellee and his son, Isaiah Burch. Before the delivery of the deed in controversy, appellant executed and forwarded to appellee a deed, reserving in appellant a certain interest in the mineral rights in the land. Appellee refused to accept that deed, and returned it to appellant for correction, which was promised him. Appellant received back the first deed, and then executed the deed in question, and, without resubmitting it to appellee for his acceptance, had it recorded and notified appellee that he could get it from the county clerk. That deed was delivered to appellee by the county clerk. When he read it appellee was not satisfied with its conditions and renewed his controversy with appellant by correspondence; whereupon appellant's secretary and treasurer, on February 5, 1925, wrote appellee as follows, in explanation of the deed:

"In partial reply to your favor of the 26th ultimo, the records of my office and my recollection concerning the deal with you are as follows. * * *

"At some time between the date of the contract and the delivery of your deed, the writer had a conversation with you in which you objected so seriously to the reservation of the $\frac{1}{16}$ of the oil and minerals that he arranged with you to waive this reservation, taking instead $\frac{1}{2}$ of the annual rentals and the clause was so written in your deed; $\frac{1}{2}$ of the

annual rentals being ½ of 25¢ per acre per year or $20.00 for the year.

"The effect of this change was that while your rentals were decreased 12-½¢ per acre per year on the life of the lease which might at any time be dropped because the price that we obtained for this lease was considerably higher than any other lease brought on land in that vicinity. You gained $\frac{1}{16}$ of the oil and minerals, which in the event of any development would be worth considerably more than the reduction of the rentals and eliminated us as a factor in your handling the oil and mineral rights after the present lease was lapsed or cancelled."

Appellee was a very ignorant man, with a very limited knowledge of the meaning of words of reservation and conveyance, and with but little experience in land transactions. He was not represented by an attorney in his dealings with appellant; which fact was known to appellant. Appellee testified that he had absolute confidence in appellant's representations to him, and that he believed the representation made to him in the letter quoted from above, and finally accepted the deed which appellant had executed and recorded, believing that appellant had no reserved interest in the minerals. He testified further that he did not discover the fraud practiced upon him by appellant until just a short while, that is, about September, 1932, before this suit was filed in December, 1932. Appellant offered in evidence certain letters with appellee's name signed thereto, which acknowledged, recognized, and acquiesced in the reservation. Appellee denied writing these letters, and denied his signature thereto. Appellant's expert witness, after an examination of appellee's writing, testified that these letters were written by appellee; but the expert was compelled to change his testimony as to other signatures, and in view of all his testimony, though conceding his integrity, the jury was fully justified in giving but little weight to his testimony as an expert. Appellant's secretary and treasurer testified that he was mistaken as to the facts at the time he wrote the letter quoted from above; that, in fact, the reservation of the mineral interest was retained in appellant and that he had forgotten this reservation when he wrote the letter. However, on this issue the fact was that the witness, as stated in the letter, had in his office all the records of the transaction. The letter left the inference that before writing it the witness had examined all the records. But this witness had to amend his testimony in certain

other most material respects. The record shows that he was a most unwilling witness in the hands of appellee's counsel and had a very imperfect recollection of the transaction, but a detailed recollection when being examined by counsel for appellant. The weight of the testimony of this witness and his credibility was in the hands of the jury. Appellee testified further that, when he executed the contract of sale in duplicate, neither copy had the "rider" attached to it; on the trial, appellee's copy had no rider, while appellant's copy did have the rider. All the evidence was to the effect that, during the negotiations leading up to the execution of the contract of sale, nothing was said about reserving in appellant any interest in the minerals, and that appellee was to receive a deed burdened only with the outstanding mineral lease; under appellee's testimony, nothing was said about this reservation and he knew nothing about it until he found it in the first deed which he refused to accept. This brief summary of the large statement of facts fully supports the jury's answer to all five questions.

■ Appellee contends that, because of the law governing this contract of sale, the issue of limitation was not in this case. However, it was pleaded by appellant and submitted to the jury; conceding that the issue was in the case, the law is that limitation did not begin to run against appellee, to correct his deed, until the fraud, perpetrated upon him by appellant, had been, or ought to have been, discovered. That was one of the issues submitted to the jury and found by it in appellee's favor.

■ By its fourth bill of exception, appellant complains of the following argument by appellee's counsel to the jury: "Put yourself in this old man's shoes" (referring to and meaning plaintiff, Joshua Burch). The following are the only facts certified to by the court in connection with this argument: "That while the Honorable Frank B. Lloyd, one of the attorneys for the Plaintiff, was making his opening argument to the jury and while commenting upon the evidence with reference to the reservation in a deed offered in evidence from the Defendant, C. W. Hahl Company to the Plaintiff, Joshua Burch, stated to the jury the following:"

This statement is immediately followed by the argument complained of. From the facts certified by the bill, we see no basis upon which to predicate injury. Our ruling on this bill is limited to the exception urged.

1044

■■ We quote as follows from the third bill of exception, also complaining of argument of counsel for appellee:

"While the Honorable Frank B. Lloyd, one of the attorneys for Plaintiff, was making his opening argument to the jury and commenting upon the answer that the jury should make to the special issues submitted to them by the Court and particularly referring to their answer to question number 1, said attorney made the following statement in his argument: 'If this rider was not attached to the contract at the time it was signed, Mr. Burch is entitled to the minerals.'

"The defendant then and there in open court objected to said argument upon the ground that it advised the jury the effect of their answers in that it informed the jury that if said rider was not attached the Plaintiff would recover in the case and then and there submitted a written request to the court to instruct the jury not to consider said remark, which request was then and there by the Court overruled, to which the Defendant in open Court excepted."

The exception to this argument was not well taken. An affirmative answer to question No. 1, under the charge of the court, did not mean that appellee would be entitled to judgment to the minerals. The issue of limitation was also in the case. But had question No. 1 been the only determinative issue submitted, the argument would not have constituted reversible error. The issue was simple, and the most ignorant man on the jury would have known the legal effect of his answer to question No. 1. As said by the Galveston court in Fain v. Nelms (Tex. Civ. App.) 156 S. W. 281, 284: "It must have been a remarkably stupid juror who would not have gathered what would be the legal result of a finding on this issue. We are inclined to the opinion that counsel only told the jury what they already knew, and we cannot believe that they disregarded the evidence and charge of the court, and were influenced by this argument. These improper remarks, we think, ought not to bring upon appellee the penalty of a reversal."

The law of this proposition was correctly stated by the El Paso Court in Texas & P. Railway Co. v. Edwards (Tex. Civ. App.) 21 S.W.(2d) 754, 756: "Ordinarily it is reversible error for counsel to tell the jury the legal effect of their answers to special issues, but such does not appear to be the rule when the effect of the remarks is only to apprise the jury of a fact which they already know."

In Galveston, H. & S. A. Railway Co. v. Harling, 260 S. W. 1016, the Commission of Appeals said: "We cannot see how it could jeopardize the rights of the railway company for plaintiff's counsel in their argument to tell the jury something that they must have already known at the time he told it to them."

■ We give in full appellant's second bill of exception, on the issue of improper argument:

"Be it remembered, That on the 15th day of June, 1933, upon the trial of the above entitled and numbered cause while the attorney for the Plaintiff was making his closing argument to the jury and while commenting upon whether or not the agreement between Plaintiff and Defendant provided for the reservation of oil royalty, the said attorney for the Plaintiff stated to the jury in substance as follows:

" 'The C. W. Hahl Co. finds itself in a dilemma. It can take either horn. It did not render this royalty for taxes for a period of ten years. He beat the County out of tax money just like he is trying to beat this Plaintiff out of these minerals,' and the attorney for the Defendant objected to such and requested the Court to instruct the jury not to consider the statement that the Defendant beat the County out of any money, and upon such request being made by the Defendant and prior to the time the Court acted upon the same, the attorney for the Plaintiff then stated to the attorney for the Defendant in the presence of the jury as follows:

" 'I did not say that he beat the County out of any money, I said that you were in a dilemma. He either beat this County out of money or beat Mr. Burch out of these minerals, you can take your choice.'

"The Court then overruled the Defendant's Motion to so instruct the jury, to which Defendant then and there in open Court excepted."

This argument was not erroneous. It was proper for counsel to deduce from the testimony "the dilemma" suggested by the bill of exception. Appellant had not paid taxes on the reserved oil interest; and if appellee's theory of the facts was correct, appellant had tried to reserve the oil interest by the grossest character of fraud.

We think the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.