## FORT WORTH & D. C. RY. CO. v. KIEL.
### No. 14653.

Court of Civil Appeals of Texas.
Fort Worth.
Nov. 3, 1944.

Rehearing Denied Dec. 1, 1944.

Barwise & Wallace, of Fort Worth, and Carrigan, Hoffman & Carrigan, of Wichita Falls, for appellant.

E. W. Napier, of Wichita Falls, for appellee.

McDONALD, Chief Justice.

Appellee owned a swimming pool near a small creek. Appellant's railroad tracks

146

crossed the creek a short distance below the swimming pool. The tracks lay upon an embankment, and a small culvert crossed the creek. On the occasion in question the embankment backed flood waters against the concrete wall of the swimming pool, causing it to cave in. Suit for damages to the pool was predicated upon the theory that the culvert was too small to permit the escape of the flood waters. Appellee recovered judgment for his damages.

Under its first point of error appellant contends that it should have had an instructed verdict on the ground that the undisputed proof showed that the damage was caused by an unprecedented flood. Under its second point appellant contends that it should have had judgment on the verdict, because the jury found that the flood was unprecedented. We think that both of these points should be overruled on the ground that there was no competent evidence to show that the flood was unprecedented.

The jury found that the flood was unprecedented, but the court, upon motion for judgment notwithstanding the verdict, disregarded this finding of the jury.

■■ Article 6328, Revised Civil Statutes, provides: "In no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices as the natural lay of the land requires, for the necessary draining thereof."

In 35 Tex.Jur. p. 186 et seq., will be found a lengthy discussion of the liability imposed by this statute. From the decisions there cited, it appears that liability under this statute does not depend upon negligence. The statute applies to water overflowing from a stream as well as to surface water. The object of the statute is to compel a railroad company to construct its embankments so as to permit water to flow as it had flowed previously to the building of the road. The company may successfully defend the suit on the ground that it could not have foreseen and prevented the injury for which recovery is sought, the rainfall having been unprecedented. If at the time of the construction of the road it is known, or could have been ascertained by reasonable diligence, that unusual or extraordinary floods have occurred within the memory of living persons living in the vicinity, their recurrence should be anticipated and guarded against. Whether the rainfall was unprecedented and hence unforeseeable is ordinarily a question of fact for the jury.

■■ It becomes necessary therefore to examine the evidence to determine whether it raised an issue of fact. The flood in question occurred in 1941. The appellee Kiel saw the high water. He had lived near the pool about fifteen years, and for many years prior to that time had lived something more than a mile north of the pool. There was a flood in 1938, which lacked six inches or more of being as high as the flood of 1941. It did not damage the swimming pool. He had not since he had lived near the pool seen the water as high as it was in 1941. He was asked whether he had ever seen it that high before he moved near the pool, and answered that it could have been that high but that he had not seen it. He said he could not say, that he did not know. He testified that the water in 1941 was eighteen inches or more over the highway which crossed the creek a short distance south of the pool. The witness Gilstrap testified that there was some very wet weather about that time; that the creeks were all out of banks; that some of them were higher "they claimed" than they had been in fifty years, but that the witness did not know whether it was this particular one or not. He testified that he had seen the water across the highway a good many times. He said that he did not know whether this was the highest the water had ever been at this place. The witness Brooks, testifying for appellant, was in charge of a State Experimental Farm located six or seven miles from the swimming pool. He had kept a record of rainfall at the Experimental Farm for fifteen years. This farm lay in another watershed. It is obvious that the record of rainfall kept at the Experimental Farm would not prove whether the 1941 flood near appellant's swimming pool was unprecedented. It is a matter of common knowledge that in this part of the country rainfall during a given period can vary greatly in a distance of five to seven miles. The witness said that he did not know the amount of rainfall in the watershed in which the swimming pool was located. He had been stopped in times past by water over the highway near the swimming pool.

It seems to us that the evidence falls short of showing that the flood of 1941 was of such unprecedented nature as that it

could not reasonably have been anticipated by the railroad company. The most that could be said is that the 1941 flood was a few inches higher than any flood that had occurred during the fifteen years that appellee Kiel had lived near the pool. Apparently it was not an unusual occurrence for flood water to flow over the highway. The railroad could reasonably have anticipated that a flood a few inches higher might occur. We think that the evidence fails to raise the issue of the unprecedented nature of the flood, and that the trial court properly disregarded this finding of the jury.

It seems to be the rule in this State that the unprecedented nature of the flood will not constitute a defense if it concurred with the negligence or other wrongful act of the defendant in causing the damage. 1 Tex.Jur. p. 700; Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221; Galveston, H. & S. A. R. Co. v. Riggs, Tex. Civ.App., 107 S.W. 589, which appears to be cited with approval in Turner v. Big Lake Oil Co. No issue was submitted to the jury inquiring whether the unprecedented flood caused the damage. We do not believe that the evidence shows as a matter of law that the unprecedented rainfall, if it was unprecedented, was the sole cause of the damage. The jury found that the failure to discharge the duty imposed by Article 6328 (as well as the negligent failure to maintain an "adequate" culvert) was a proximate cause of the damage.

The jury found that the wall of the swimming pool which caved in was improperly constructed, and that it would not have fallen in had it been properly constructed. Another issue inquired whether the manner of construction of the wall of the pool was the sole proximate cause of the damage, which the jury answered in the negative. Under its third point of error appellant contends that it should have had judgment upon these findings of the jury. The mere fact that plaintiff's wall may have been improperly constructed would afford no defense for the wrongful act of defendant in damaging it. Be the wall of ever so poor construction, such fact would give appellant no license to destroy it.

The fourth point charges error in permitting appellee Kiel and his witness McPherson to testify that the railroad embankment backed up the water and caused the damage, on the ground that such testimony constituted a mere conclusion and was an invasion of the province of the jury. Appellee saw the flood waters, and testified that the embankment of the railroad dammed up the creek. It seems to us that this involved what the witness had actually seen, and was not a mere conclusion. The fact that the jury might be asked the same question would not of itself render the testimony inadmissible. McPherson was a civil engineer. As such he was entitled to express an opinion that the railroad embankment dammed up the water.

The second special issue inquired whether the railroad company "failed to construct at the place in question the necessary culvert or culverts as the natural lay of the land in question required for the necessary draining thereof." The fifth issue inquired whether the railroad company failed to maintain an "adequate" culvert at the place in question. Under the fifth point of error it is contended that the issues as drawn put upon the railroad company the absolute burden of building culverts sufficient to accommodate any size flood, whether unprecedented or not, and that the only duty, either under the common law or under Article 6328, "was to construct and maintain such culverts as would accommodate and carry off the reasonable and ordinary flow of water." The second issue was substantially in the language of Article 6328. The essence of the objection made to it in the trial court, and here, is that the duty of the railroad company was only to construct such culverts or bridges as were reasonably required in order to accommodate and carry off reasonable and ordinary flows of water. The latter statement is not in accord with the law. The culvert must be sufficient not only to carry off ordinary flows of water; it must be sufficient to accommodate floods of any character that could reasonably be anticipated. The issue submitted was not subject to the objection made to it. We do not consider that the fifth issue is subject to the objection made to it in appellant's point of error.

The sixth and last point of error charges that the court should have granted a new trial because of conflict in the answers of the jury to special issue nineteen, on the one hand, and the answers to issues 2 and 5, on the other. The substance of the second and fifth issues has been given. The nineteenth issue inquired whether the bridge "was sufficient to take

care of the natural and ordinary flow of waters down Pond Creek." We find no conflict here. The ordinary flow of water down Pond Creek was not the thing involved in this case. It was a flood that brought about this law suit. Apparent conflicts in the verdict should be reconciled if such can reasonably be done in the light of the facts of the particular case, the pleadings and the evidence, the manner in which the issues were submitted, and in view of the other findings, when considered as a whole. 41 Tex.Jur. p. 1224. Applying this rule, it seems reasonable to say that the jury, in answering the nineteenth issue, had in mind the ordinary flow of water down the creek, and not flood waters.

Finding no error, we affirm the judgment of the trial court.