# FORT WORTH & D. C. RY. CO. v. KIEL.
## No. 14751.

Court of Civil Appeals of Texas.
Fort Worth.

May 24, 1946.

Rehearing Denied June 28, 1946.

406

Barwise & Wallace, of Fort Worth, and Carrigan, Hoffman & Carrigan, of Wichita Falls, for appellant.

E. W. Napier, of Wichita Falls, for appellee.

SPEER, Justice.

W. H. Kiel sued Fort Worth & Denver City Railway Company for damages to a swimming pool alleged to have been caused by the defendant's railroad embankment damming up a small stream and causing high waters to back up into the swimming pool, softening the dirt around concrete walls, resulting in the collapse of one of the walls.

Plaintiff relies upon allegations of negligence by the defendant in failing to construct and maintain such necessary culverts and sluices in and through its roadbed on east Pond Creek, as the natural lay of the land requires for necessary drainage thereof.

Plaintiff is the owner of a small tract of about five acres of ground upstream from said railroad embankment, upon which tract of land he had constructed and maintained a swimming pool for the use of which the public was charged a small fee. That during the month of October, 1941, water came down said stream and because of said railroad embankment, which did not contain sufficient culverts and sluice-ways to permit the water to flow on down stream, said water was caused to back up to and flood plaintiff's said swimming pool, resulting in his damages sued for.

Defendant plead general denial and specially (1) that the state and county highway was located between its railroad tracks and the property of plaintiff, and that said highway was so constructed as to impede the flow of water down Pond Creek and to back it up to plaintiff's property and thus cause such damages as plaintiff sustained; (2) that the rainfall on the occasion in question was unprecedented and was such that defendant could not have reasonably anticipated; (3) that plaintiff was contributorily negligent in the manner in which he constructed his swimming pool on the banks of said stream so that the water from the said creek seeped under his walls and thus caused such damages as he sustained.

The case was tried to a jury on special issues and all issues material to plaintiff's recovery were answered favorable to him. The court submitted issues on defendant's allegations of unprecedented rainfall, the contributing effect of the highway on plaintiff's damages, and also inquired if plaintiff was guilty of contributory negligence in the manner and place in which his swimming pool was constructed on the banks of the creek, so as permit water to seep under his walls from said creek. The jury found against defendant on each of its said special defenses.

The court entered judgment for plaintiff for $1,550, together with interest thereon at six per cent per annum from October 31, 1941. The defendant has appealed. For convenience we shall continue to refer to the parties as they appeared in the trial court.

Defendant's first point of error complains because the court refused to instruct the jury to return a verdict in its favor based on the assertion that the undisputed proof shows that the damage was the result of an unprecedented flood.

This case was before us on a former appeal. See Fort Worth & Denver City Ry. Co. v. Kiel, Tex.Civ.App., 185 S.W.2d 144. The Supreme Court granted a writ of error and reviewed the opinion by this court. See Fort Worth & Denver City Ry. Co. v. Kiel, 143 Tex. 601, 187 S.W.2d 371.

The former opinions are of little assistance to us on this appeal; this for the reason, on the identical pleadings of both parties and substantially the same testimony the jury upon the first trial answered special issues favorable to the defendant and the court entered judgment for plaintiff non obstante veredicto, while upon the last trial, as indicated above, all special issues were answered favorable to plaintiff.

■■ In determining whether or not a trial court should instruct a verdict in favor of one of the parties, the court must presume to be true the evidence, if there be such, which is favorable to the party against whom the verdict would be instructed. Before the court could have properly instructed a verdict in favor of defendant, the plaintiff was entitled to have the court place upon the testimony favorable to him the most liberal construction in his favor that the evidence would possibly bear, and was entitled to the benefit of all reasonable inferences arising from the evidence. Some courts have gone so far as to say that all evidence contradictory to that favorable to the losing party, under an instructed verdict, should be disregarded. Burroughs et al. v. Smith, Tex. Civ.App., 294 S.W. 948, writ of error refused. Other tests have been made to the effect that if the testimony is of such a character as that reasonable minds might differ as to the conclusions to be drawn from it, no instructed verdict should be had. Lee v. International & G. N. Ry. Co., 89 Tex. 583, 36 S.W. 63; Woods v. Townsend, Tex.Sup., 192 S.W.2d 884. See also Texas & N. O. R. Co. v. Blake, Tex.Civ. App., 175 S.W.2d 683, writ of error refused; McCrory's Stores Corp. v. Murphy, Tex.Civ.App., 164 S.W.2d 735, writ refused, want of merit. It is true that plaintiff testified that he had lived in the vicinity of his present property since about 1912; not all the time, however, at the place involved in this suit. He testified that the water or flood of 1941, of which he complains, was the highest he had ever seen at that place. Another witness who saw both the 1941 flood and one in 1919, said that the one of 1919 was the highest he had ever seen on that watershed. Yet, another witness said that the flood of 1938 was three or four inches higher at the railroad embankment than that of the 1941 flood.

We shall not attempt to analyze in every detail the testimony, even though it could be construed to be conflicting. It is easy to understand why different individuals over a long period of years would have different ideas about the height attained by flood waters during that period of time. There is testimony in this record that at the time of the 1938 high water the railroad tracks were laid on top of cross-ties on the embankment and when the high water would reach the top of the embankment it could pass over the embankment under the rails and between the ties; that this happened in 1938, and the embankment washed out. That thereafter the defendant rebuilt its embankment, raising the track to sub-

stantially where it had previously been and filled in with ballast between the dirt and the bottom of the steel rails so that water could not pass under the rails but would have to rise on the upper side high enough to go over the steel rails. Under such conditions the impounded water would be from eight to ten inches higher than when it could pass under the rails as it did in 1938. It is argued that this is the condition that plaintiff had in mind when he said the water was higher at his place in 1941 than it was in 1938.

On the former appeal the defendant urged the same point of error now before us, and the Supreme Court overruled it (143 Tex. 601, 187 S.W.2d 371, 373) using this language: "No testimony was introduced showing that a flood of the height of this one (1941) had ever before occurred in that country within the memory of men then living. We think the evidence, when considered in connection with all the facts and circumstances surrounding this case, raises the question of unprecedented flood, and it was proper to submit that issue to the jury."

Of course if it was proper to submit that issue to the jury at the trial from which this appeal comes, the defendant was not entitled to an instructed verdict in this respect. We think there was substantial direct and circumstantial evidence to the effect that there were floods in the area involved, equal to or perhaps greater than the one which caused plaintiff's damage, to require the submission of an issue, as was done, on unprecedented rainfall. We therefore overrule the point of error.

Points 2, 3, 4 and 5 present a novel but interesting question. They each complain of as many different matters growing out of the voir dire examination of the panel by plaintiff's counsel. The points are briefed as a group and we shall so discuss them. The material parts of the lengthy bill of exception, upon which the points are predicated, are as follows:

"Now, gentlemen, here's what I want to find out from you:

"Twelve of you are going to be selected to try this case. You are going to answer the questions the court asks you, according to a preponderance of the evidence. In other words, the plaintiff has certain issues that he must establish by a preponderance of the evidence; in the end you will answer those issues, or you will answer them against him. One of the issues will be this: Do you find from a preponderance of the evidence that the defendant railway company was negligent in the manner in which it constructed its roadbed, or that it was negligent in the manner in which it maintained its roadbed; those will be issues the plaintiff will ask you to answer, and the court will submit those issues. If we don't offer any substantial proof on those issues you will answer them against us, because the burden is on us to prove our cause by a preponderance of the evidence. If you don't believe we've done this, it is your duty to answer those issues against us. The same thing is true of the defendant, that it was an unprecedented flood. That's important, remember that.

"Now the court will ask you this issue, after defining what an unprecedented flood is, the court will ask you if you find from a preponderance of the evidence that the flood in question was unprecedented; so, of course, if they don't offer any proof, any substantial proof that convinces you that it was unprecedented, then you would answer that issue against them, wouldn't you? The burden is upon them to prove by a preponderance of the evidence that it was an unprecedented flood, and if they don't prove it, then we are not obliged to offer any proof on this issue at all; it's not up to us to prove it wasn't, it's up to them to prove that it was. That's one of their issues. Another one is that the wall was improperly constructed, and then the court will ask you an issue about that; probably the court may ask you whether or not the improper construction of the wall was the sole cause of its falling down, and the court may ask you whether or not it was a proximate cause of its falling down. There's a difference between the two, of course. He will tell you what proximate cause is and what a sole cause is.

"The court will ask you to find whether or not you find from a preponderance of the evidence that the improper construction of the wall was a cause of its falling down,

sole or proximate cause, and the court will also ask you this question: * * * find from a preponderance of the evidence whether or not the culvert that they had on their railroad was sufficient or adequate to accommodate or take care of the ordinary flow of the stream."

The bill of exception shows that the court permitted the voir dire examination set out over defendant's objections. There is a controversy between the parties as to the bill, but that matter is not before us. The bill bears no qualifications by the court. There is nothing in the record to indicate that any man on the panel responded in any way to what counsel had said.

■ Defendant in his brief admits that he has been unable to find any adjudicated cases directly in point, except in so far as opposing counsel's statements informed the jury the effect their answers to issues would have on any judgment to be entered on their verdict. Many cases are cited prohibiting such information. The general rule to this effect is so well settled we deem it unnecessary to cite the authorities. The inhibition is a most wholesome rule, as applicable to counsel and the trial court.

■ It requires no argument to support the beneficial purposes for which our laws authorizing the submission of causes on special issues were enacted. They were intended to have the jury find in response to pertinent questions what the facts are in a given case and remove the apparent temptation of jurors to return a verdict "in favor of" one of the litigants.

We have carefully studied the bill of exception in this case and all the language complained of and we do not construe it as violation of the rule announced. It is true counsel mentioned the things contended for by the respective parties and that the court would submit those issues, and if one of the parties who made the claim did not offer substantial evidence on the point, the jury would answer the question against him. This does not of necessity tell them the effect their answers would have on the judgment to be entered. To illustrate, where plural acts of negligence are claimed, and a jury finds against plaintiff on some and for him on others, the judgment may not be affected by those found against the plaintiff; likewise, where proximate cause is involved, either in primary or contributory negligence, a jury's answer to the negligences or contributory negligence issue alone may or may not control the kind of judgment to be entered.

■ Moreover, we are not to be understood as minimizing the importance of the rule against informing the jury of the effect their answers will have on the judgment, yet it has repeatedly been held that the rule is not violated if the jury be apprised of a matter they, of necessity, already knew. Galveston H. & S. A. R. Co. v. Harling, Tex.Com.App., 260 S.W. 1016; C. W. Hahl Co. v. Burch, Tex.Civ.App., 74 S.W.2d 1040, writ dismissed, and cases cited; Continental Oil Co. v. Barnes, Tex.Civ.App., 97 S.W.2d 494, writ refused.

■ It is a matter of common knowledge to the bench and bar that counsel may argue long and loud to the jury that a certain issue should be answered in a particular way. It would tax one's credulity to say that a competent juror would not know from such argument that an answer as suggested by counsel would be favorable to his client and would be what counsel wanted as a basis for a judgment. Yet the advocate may not tell the jury the effect such answer would have on the judgment.

When the panel was told that unless the party asserting a ground of recovery or one of defense would be required to offer testimony in support of his contention they "would find against him", could not mean more than the nature of the jury's answer to the question and not the judgment the court would enter.

In support of the points urged by it defendant cites Parker v. Schrimsher, Tex.Civ.App., 172 S.W. 165, writ refused; San Antonio & A. P. Ry. Co. v. Belt, 24 Tex.Civ.App. 281, 59 S.W. 607; Campbell v. Campbell, Tex.Civ.App., 215 S.W. 134, writ refused; Lassiter v. Bouche, Tex.Civ.App., 41 S.W.2d 88, writ refused. To read those opinions is to distinguish them from the instant case.

Parker v. Schrimsher, supra, presented error because on voir dire counsel was permitted to ask the panel and procure

from them a commitment to the effect that they would not consider a certain assertion contained in a deed of trust which plaintiff had executed, against him. The vice was procuring such commitment concerning material evidence, which of necessity would arise at the trial.

Campbell v. Campbell, supra, was a will contest, and proponent of the will sought to ask the panel, in effect, would the fact that testator made an unnatural will, omitting one member of his family, influence them in arriving at a verdict? The court excluded the inquiry and the ruling was held proper, because an answer would be to committ the jurors not to permit legitimate and material evidence of facts to influence them. The other cited cases are similar.

In the instant case no such commitments by the jurors were sought or had. The examination by counsel was rather unusual, but we observe that the case had been previously tried, and that the pleadings had not been amended since the other trial, and in view of the decision of the Supreme Court upon the other appeal, counsel and the trial court could know with reasonable certainty what the testimony would be and the issues to be submitted to the jury.

 Naturally, the members of the panel would have to know the nature of the case and the contentions of the respective parties to answer many questions essential to their fitness as jurors. The law does not prescribe any particular line of inquiry for such preliminary examinations. Our courts have many times held that a very broad latitude should be allowed on voir dire, to enable counsel to intelligently exercise his peremptory challenges. The extent of such examination is largely within the discretion of the trial court, and his acts will not be revised on appeal unless it clearly appears that his discretion has been abused, 26 T.J. 660, § 95, et seq. In addition to the voir dire examination of the panel, after the jury is selected the parties may read their respective pleadings and may state briefly to the jury the nature of the contentions of the pleader and the facts relied upon to support them. Rule 265, Texas Civil Procedure. However, we do not construe this rule to mean that a party may violate other rules of procedure in availing himself of the cited rule. We do not believe that an abuse of the trial court's discretion has been shown in this record and the points are overruled.

 Defendant's sixth point asserts error in the court's permitting plaintiff to testify that the water was backed up on his premises by the railroad embankment over its objection that it was a mere conclusion of the witness and an invasion of the province of the jury.

Plaintiff described the situation as he saw it next morning after the heavy rainfall on the preceding night; he said, among other things, that in the vicinity on the upstream side of the railway embankment a great lake of water, a half mile wide in places, had accumulated; that it covered the highway, the culvert over the stream, and the eighteen-inch banisters thereon; that the water covered his swimming pool; that in some places the water was moving slowly while in other places it was still. Being asked the cause of the "lake of water" present, he said the embankment had caused it to back up that way. An engineer qualified as an expert; he gave levels of plaintiff's property, the highway, and the railroad embankment and rails in the area, and in response to an appropriate hypothetical question said the embankment backed the water up over plaintiff's property. Objection to his opinion was made at the time but no complaint is brought forward on appeal. The offending testimony by plaintiff was only cumulative of that by the engineer and for that reason was harmless, if error at all. We believe that under the circumstances of this case plaintiff was attempting to relate a fact as he saw it, and it was competent for jury consideration under such weight as it was entitled to.

Seventh point of error complains of the admission in evidence of three photographs taken the day before the trial which was begun on October 9, 1945, when the damages complained of took place in October, 1941.

The pictures were admittedly made the day before the trial began. Plaintiff identified each of them and said they presented a true and correct view of the area pre-

cisely as it existed before the flood complained of.

Defendant's objections were many and far-reaching. In substance they are: (1) its counsel did not know the pictures were being made for introduction in evidence, and he had no opportunity to rebut them by procuring evidence of a different condition in 1941; (2) the pictures did not show the culvert in the embankment nor in the highway; (3) they did not disclose what amount of vegetation or debris were present in 1941. And further that an agreement had been had between plaintiff's counsel and counsel for defendant to the effect that if plaintiff wanted to withdraw the pictures on file in the Court of Appeals, used upon the other trial, he would join in the request and that he had not been requested to join in such a request.

■ Generally, photographs are never admissible in evidence except when they are shown by competent testimony to properly reflect an area or object at the time involved. Then they are admissible to enable the court or jury to properly understand the facts involved in the case. A very interesting discussion of the rule is found in the majority and minority opinions in Dallas Ry. & Terminal Co. v. Durkee, Tex.Civ.App., 193 S.W.2d 222, writ refused, no reversible error.

■ Irrespective of the testimony of plaintiff, which on its face entitles him to introduce the pictures in evidence, we have carefully examined the photographs and are unable to detect anything shown by them that in any way adds to or detracts from any part of the testimony by witnesses. They do show the comparative relation of the railway line to the highway and the general proximity of the plaintiff's property to both, but all this was detailed by witnesses. The comparative heights of the general lay of the land, the highway, and the railroad embankment were detailed by apparently competent engineers and were not dependent upon the pictures which added nothing. We see no reversible error in the point raised.

■ Plaintiff (the appellee) by his brief presents a cross-assignment of error to the effect that since his action was one for permanent damage to real estate, the measure of damages was the difference between the reasonable market value of his land and such value immediately after the injury occurred, which amount the jury found to be $3,000, and that his judgment should have been for that amount rather than the amount expended by him to place his swimming pool back in as good condition as it was before the damages occurred, which amount the jury found to be $1,550, the amount for which judgment was entered. He prays that the judgment be reformed and affirmed for $3,000.

In view of the pleadings and the nature of this case we are unwilling to sustain the cross-assignment and reform the judgment as prayed for. We do not construe the petition as one for permanent damages to real estate. Plaintiff's allegations were substantially that his property was reasonably worth $5,000 before the damage and worth not more than $3,000 after the damage, making an alleged difference of $2,000, rather than the amount the jury found. He also alleged that the reasonable amount necessary to repair his property and replace it in as good condition as it was before the damage done was $1,775. He further pleaded: "That by reason of the foregoing facts the plaintiff has been damaged in the sum of $1775.00." His prayer was, "That upon a trial hereof, he have judgment for his damages," etc. The jury verdict and judgment were as above indicated.

The testimony does not show that plaintiff's damages were "permanent damages to real estate" as that term is used in the law. It appears that defendant's embankment, which is shown to have occasioned plaintiff's loss, is located on its own property, and that no invasion of plaintiff's land was made by defendant; that such damages as plaintiff sustained were not occasioned, alone, because of the presence of defendant's embankment, but because of the negligent manner of its maintenance, for lack of adequate culverts and sluices, and then only at intervals dependent upon the elements under certain conditions. Notwithstanding the obvious fact that the structure of defendant's embankment and

plaintiff's concrete swimming pool may have been permanent in their nature, it does not follow that the damage to plaintiff's real estate, upon which the concrete swimming pool is located, would be "permanent damages to real estate." See McClellan v. Krebs, Tex.Civ.App., 183 S.W. 2d 758, error refused, want of merit and the authorities there cited.

All points of error and the cross-assignment are overruled and the judgment of the trial court is affirmed.