

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

NO. PD-0796-10

**DANIEL RAY MORRIS, Appellant**

**v.**

**THE STATE OF TEXAS**

ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE ELEVENTH COURT OF APPEALS
EASTLAND COUNTY

COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.

## O P I N I O N

Given the ground for review that we granted in this case, I agree with the majority's

resolution. This is the ground that we granted:

> The court of appeals erred in holding that purportedly expert testimony about
> "grooming" was admissible where there was no showing that the study of
> "grooming" was a legitimate field of expertise.

The only question that we need address is the legitimacy of a phenomenon known as

"grooming" behavior by those who use a particular method to get a person to comply with

what the groomer wants.[1]  This is not rocket science.  It does not depend upon any scientific, technical, or psychological principles or methodology.  This type of testimony does not depend upon educational expertise, any calculable rate of error, learned treatises, peer review, or any other esoteric skill.  This is not even "soft science."[2]  It is just "horse sense" expertise developed over many years of personal experience and  observation.  It is "modus operandi" evidence that may or may not be relevant in a particular case.  We may take judicial notice of the *legitimacy* of such a behavioral phenomenon by, *inter alia*, looking to decisions from other courts that have addressed that issue.  What our decision in *Hernandez* forbids is taking judicial notice, for the first time on appeal, of *the scientific reliability* of a particular machine, such as the Adx machine in that case, or of an intoxilyzer machine, or DNA or blood lab technology, or a particular scientific methodology for which there has not been some showing, in a trial court hearing, of its scientific reliability.[3]

Texas law has long allowed such experiential "horse sense" expertise.  For example, in one 1929 case, the court of civil appeals held that an experienced cowman was qualified

---

[1] In this case, Ranger Hullum defined "methodology" as the method of operation or how a particular crime is committed.  He defined "grooming" as an attempt by an offender to get the victim to comply with what the offender wants the victim to do.  Going into a child's bedroom and spending 10 to 15 minutes, then finally spending the night, he said, was an example of grooming.

[2] *See Nenno v. State,* 970 S.W.2d 549, 560-61 (Tex. Crim. App. 1998).

[3] *Hernandez v. State*, 116 S.W.3d 26, 30-32 (Tex. Crim. App. 2003).

to give his opinion on how many men were needed to handle a herd of cattle.[4]  Just as Texas has long recognized that farmers may be expert witnesses in matters peculiarly within their knowledge,[5] so may police officers.  We, along with federal courts and other state courts have recognized that police officers, based solely on their years of experience and training, may qualify as experts to testify about a wide variety of "modus operandi" techniques of illegal enterprises or conduct.[6]  Their expert "modus operandi" testimony may be admissible when it is both relevant to a disputed issue and when that "modus operandi" testimony is of appreciable assistance to the jury[7] because it is outside the average juror's experience or full understanding.[8]

---

[4] *Texas & P. Ry Co. v. Edwards*, 21 S.W.2d 754, 757 (Tex. Civ. App.–El Paso 1929), *rev'd on other grounds*, 36 S.W.2d 477 (Tex. Comm'n App. 1931).

[5] *See McDonald v. Webb*, 510 S.W.2d 670, 673 (Tex. Civ. App.–Corpus Christi 1974, no writ) (farmer, who was qualified by his technical training and experience, could testify about quality of cotton and what makes a "below grade" bale of cotton); *Kincheloe Irrigating Co. v. Hahn Bros. & Co*., 132 S.W. 78, 81 (Tex. Civ. App.–San Antonio 1910), *aff'd* 146 S.W. 1187 (Tex. 1912) (farmer who had grown rice for three years and stated that he knew a good rice crop from a poor one, was qualified to testify that a certain plot would have yielded a specific number of bags per acre had it been properly watered).

[6] *Fields v. State,* 932 S.W.2d 97, 107-08 (Tex. App.–Tyler 1996, pet. ref'd) (DPS lieutenant in narcotics service could testify to characteristics and patterns commonly existing among "people who would be traveling with quantities" of controlled substances, especially cocaine); *Foster v. State,* 909 S.W.2d 86, 88-89 (Tex. App–Houston [14th Dist.] 1995, pet. ref'd) (experienced police officer could testify as an expert on modus operandi of "juggings"-well-organized robberies-which "explained the rather complicated maneuvers of the co-actors with various automobiles and license plates").

[7] *See* 7 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1923, at 29 (Chadbourne Rev. 1978).

[8] *See e.g. United States v. Perez*, 280 F.3d 318, 341-42 (3d Cir. 2002) (police officers may testify as experts to modus operandi of drug traffickers based upon experience and training);

The adoption of Rule 702 by both Texas and the federal courts has not changed this aspect of experiential expertise.[9] Indeed, the advisory committee to the Federal Rules of Evidence has explicitly discussed the "reliability" aspect of "modus operandi" expertise offered by police officers:

> The [2002] amendment [to Rule 702 of the Federal Rules of Evidence] requires that the testimony must be the product of reliable principles and

---

*United States v. Buchanan*, 70 F.3d 818, 832 (5th Cir. 1995) (narcotics agent may testify to the significance of conduct or modus operandi of drug distribution business); *United States v. Gibbs*, 190 F.3d 188, 210 (3d Cir. 1999) (government agents may testify to the meaning of coded drug language); *United States v. Gil*, 58 F.3d 1414, 1421–22 (9th Cir. 1995) (expert testimony regarding how drug-traffickers employ telephone pagers and public telephones to avoid detection by police was properly admitted); *United States v. Tapia–Ortiz,* 23 F.3d 738, 741 (2d Cir. 1994) (affirming the admission of expert testimony of how drug traffickers employed telephone pagers "in order to avoid detection"); *United States v. Gastiaburo,* 16 F.3d 582, 588-89 (4th Cir. 1994) (expert testimony about "tools of the trade" of drug traffickers, including "beepers," was properly admitted); *United States v. Solis,* 923 F.2d 548, 549–51 (7th Cir. 1991) (expert testimony that the use of "beepers" by drug traffickers permit them to be anonymous and mobile was properly admitted); *United States v. Sellaro*, 514 F.2d 114, 118-19 (8th Cir. 1973) (FBI agent qualified as expert on modus operandi of bookmakers and could define the meaning of various bookmaker terms, even though he had never placed a bet with a bookie).

[9] *See* FED. R. EVID. 702, advisory committee notes to 2002 amendments. The advisory committee states,

> Some types of expert testimony will be more objectively verifiable, and subject to
> the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded. *See, e.g.*, American College of Trial Lawyers, Standards and Procedures for Determining the Admissibility of Expert Testimony after *Daubert*, 157 F.R.D. 571, 579 (1994) ("[W] hether the testimony concerns economic principles, accounting standards, property valuation or other non-scientific subjects, it should be evaluated by reference to the 'knowledge and experience' of that particular field.").

methods that are reliably applied to the facts of the case. While the terms "principles" and "methods" may convey a certain impression when applied to scientific knowledge, they remain relevant when applied to testimony based on technical or other specialized knowledge. For example, when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. The method used by the agent is the application of extensive experience to analyze the meaning of the conversations. So long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted.[10]

---

[10] *Id.*  The committee elaborated that

Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *See, e.g., United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); *Tassin v. Sears Roebuck*, 946 F.Supp. 1241, 1248 (M.D.La. 1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). *See also Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough."). The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable. *See O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on a completely subjective methodology held properly excluded). *See also Kumho Tire Co. v. Carmichael*,

Appellant argued in the trial court, and on appeal, that "the State had presented no evidence that 'the theory under which he's going to express these opinions [is] accepted by the scientific community or the psychiatric community or the psychological community[.]'"[11] He is absolutely correct. This Court need not take judicial notice of the scientific, psychological, or psychiatric "reliability" of expertise concerning the "modus operandi" of grooming. Indeed we should not. As the dissent appropriately notes, the concept of scientific "reliability" has no application to such testimony. "Grooming" is simply a behavioral phenomenon that may or may not apply in a given scenario. One cannot, for example, determine the scientific reliability of a police officer's testimony that when Dan sidled up to Simon, looked around to make sure no one else was watching, then quickly gave Simon a $10 bill and took something from Simon's hand, that this was a drug transaction. There is no determinable "error rate" for how many times this type of interaction is a drug transaction versus something else. There are probably few treatises, research studies, or peer review articles written on the topic of the reliability of a drug transaction "modus operandi." There is no psychological principle involved in such experiential "modus operandi" expertise; it is simply that the police officer, like Justice Stewart on seeing pornography,

---

119 S.Ct. 1167, 1176 (1999) ("[I]t will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.").
*Id.*

[11] Appellant's Brief on Appeal at 29.

"knows it when he sees it,"[12] or at least he has an expert opinion, based on his experience and training, concerning the significance of the particular circumstances. What the witness must be able to do is explain how his experience and training qualifies him to make assessments of a certain type of behavior and precisely why, based on that experience and training, he has formed an opinion of this particular set of circumstances.

The witness may be wrong, of course, in the particular case. Not every street corner encounter such as described above is a drug transaction. Not every developing close relationship between a young boy and an older man that involves lollipops, back-rubs, or trips to the ice-cream store is an instance of "grooming." But the relative likelihood of these particular circumstances involving that particular "modus operandi" are generally matters for cross-examination.[13]

Nor is this an example of a scientific expert, such as a psychiatrist like Dr. Coons, testifying to unscientific "horse sense" dressed up in a doctor's white robe. As we stated in *Coble v. State*,[14] the danger with unscientific expertise posing as science is that the jury will

---

[12] *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).

[13] Appellant argues that there must be empirical data to support the phenomenon of "grooming" behavior before it can be the subject for expert testimony: "Where, however, in the record before the Court is there any empirical data showing, for example, how many men who give back rubs to their children turn out to be 'grooming' them?" Appellant's Brief at 23. But that is not a necessary requirement under Rule 702, nor is it a requirement of any purely experiential expertise. It is, of course, a proper topic for vigorous cross-examination.

[14] 330 S.W.3d 253 (Tex. Crim. App. 2010).

accept it uncritically.[15]  There is no such danger when evaluating a police officer's testimony concerning a "modus operandi" such as "grooming."  It is "horse sense" in plain clothes; the jury can immediately grasp the concept and use it or reject as they see fit.

Because the only question before us is whether the behavioral phenomenon of "grooming" is a legitimate one that may a suitable subject for expert testimony, I join the majority opinion.

Filed: December 7, 2011
Publish

---

[15] *Id.* at 279 n.68 (noting that, if Dr. Coons's methodology were unscientific, the intuitive appeal of his opinions would be doubly dangerous as the jury might accept his testimony uncritically) (citing *Flores v. Johnson,* 210 F.3d 456, 465–66 (5th Cir. 2000) (Garza, J., concurring) ("[T]he problem here (as with all expert testimony) is not the introduction of one man's opinion on another's future dangerousness, but the fact that the opinion is introduced by one whose title and education (not to mention designation as an 'expert') gives him significant credibility in the eyes of the jury as one whose opinion comes with the imprimatur of scientific fact.")).