### SHANNON et al. v. HORN et al.
### No. 13339.

Court of Civil Appeals of Texas.
Fort Worth.
March 13, 1936.

Rehearing Denied April 10, 1936.

R. T. Bailey, of Dallas, for appellants.

Touchstone, Wight, Gormley & Price, of Dallas, for appellees.

BROWN, Justice.

This cause involves the collision of an automobile with a truck, the collision having occurred at the intersection of a public highway, known as the Northwest highway, which runs in an easterly and westerly direction north of the city of Dallas, and Lemmon Avenue road, which is an extension of a street within the city limits of Dallas that leads north to points in Dallas county and north thereof.

John C. Horn was driving the truck, coming south on the above-named road toward Dallas, and the appellants, Le Roy Stewart and Marvin B. Shannon, were riding in the automobile, going west on said Northwest highway, about 12 o'clock p. m. March 21, 1934. The record discloses that appellant Shannon is totally blind and that Stewart was driving the automobile. The record further shows that there were signs on the Northwest highway advising drivers of vehicles coming west that Lemmon Avenue road furnished a crossing on said highway and advising the users of said highway to slow down. The record also shows that north of said highway, on Lemmon Avenue road, and about 40 to 50 feet north of said crossing, there is a stop sign on said road, which, of necessity, advises users of said road that said highway crosses it at such point and was placed there for the purpose of causing the users of said road to stop before crossing the said highway.

The evidence shows that the truck struck the automobile west of the center of said intersection and south of the center of said highway, which places the collision in the southwest corner of the intersection made by the two public roads. The truck was turned over on its side and the driver, Horn, was killed in the collision. His wife, his minor son, and his mother and father were the plaintiffs in the trial court suing Shannon and Stewart because of the death of Horn.

Forty-nine special issues were submitted by the trial court to the jury. The jury found: (1) That the rate of speed at which Stewart was operating the automobile just prior to the collision was negligence; (2) that such negligence was a proximate cause of the collision; (3) that just prior to the collision Stewart failed to slacken the speed of the automobile; (4) that such failure was negligence; (5) that such negligence was a proximate cause of the collision; (6) that Stewart "disregarded" the warning signs near the intersection; (7) that such act was negligence; (8) that it was a proximate cause of the collision; (9) that just prior to the collision Stewart was driving on the left-hand side of said highway; (10) that this was negligence; (11) that it was a proximate cause of the collision; (12) that just prior to the collision Stewart failed to have the automobile under control; (13) that such act was negligence; (14) that it was a proximate cause of the collision; (15) that Stewart failed to sound his horn; (16) that this was negligence; (17) that it was a proximate cause of the collision; (17-A) that Stewart just prior to the collision failed to keep a proper lookout; (17-B) that such failure was negligence; (17-C) that it was a proximate cause of the collision; (17-D) that immediately before the collision Horn was in a position of peril.

Issue 17-E, together with the instructions and answer thereto, reads as follows:

"Do you find from a preponderance of the evidence that the defendant Stewart on the occasion in question discovered the perilous situation of the said J. C. Horn, Jr., in time, so that by the exercise of ordinary care in the use of all of the means at hand, consistent with safety to himself, and his passenger and automobile, to have avoided the collision in question? Answer: Yes.

"In connection with special issues Nos. 17-D, 17-E, 17-F, 17-G, you are instructed that a person discovers the perilous situation of another person, whenever it reasonably appears to such person, from the facts and circumstances within his knowledge, that the other person is pursuing a course and will probably pursue it to the end, which will probably result in serious bodily injury to him.

"If you have answered special issue No. 17-E, 'yes,' then you will answer special issue No. 17-F; otherwise, do not answer special issue No. 17-F."

Special issue No. 17-F, together with its answer, reads:

"Do you find from a preponderance of the evidence that the defendant Stewart, after he discovered that the said J. C. Horn, Jr., was in a position of peril, if you have found that he did, failed to exercise ordinary care in the use of all the means at hand consistent with his own safety, and his passenger and his automobile, to avoid the collision in question? Answer: Yes.

"If you have answered special issue No. 17-F 'yes,' then you will answer special issue No. 17-G; otherwise, do not answer special issue No. 17-G."

In answer to 17-G the jury found that the failure to exercise ordinary care inquired about in No. 17-F was a proximate cause of the collision.

(18) The jury found that Horn was driving his truck at a highly dangerous and reckless rate of speed just prior to the collision; (19) that this was contributory negligence; (21) that such conduct of Horn was not the sole proximate cause of the collision; (22) that Horn ignored the stop sign on Lemmon Avenue road; (23) that this was contributory negligence on his part; (24) that it was not the sole proximate cause of the collision; (25) that Horn failed to reduce the speed of his automobile as he approached the said intersection; (26) that this was contributory negligence; (27) that it was not the sole proximate cause of the collision; (28) that Horn failed to have his car under proper control as he approached the said intersection; (29) that this was contributory negligence; (30) that it was not the sole proximate cause of the collision; (31) that just prior to the collision Horn failed to keep a proper lookout; (32) that this was contributory negligence; (33) that it

was not the sole proximate cause of the collision; (34) that Horn failed to sound his horn just prior to the collision; (35) that this was contributory negligence; (36) that it was not the sole proximate cause of the collision; (37) that Horn failed to give any signal of his intention to drive into the said intersection without stopping; (39) that this was contributory negligence; (40) that it was not the sole proximate cause of the collision; (41) that the collision was not an unavoidable accident; (42) the jury awarded damages to the widow, Mrs. Lou Ella Horn, in the sum of $5,000, and the minor son, J. C. Horn III, $1,000; (43) that the mother and father of Horn were entitled to nothing; (44) funeral expenses in the sum of $300.

On this verdict the trial court awarded judgment for appellee Mrs. Lou Ella Horn in the sum of $5,300, and for appellee J. C. Horn III $1,000.

An appeal has been taken, and the case is presented to us.

A number of assignments of error are found in appellants' brief and seven propositions presented.

Proposition No. 1 complains of the submission to the jury of special issues 17–D, 17–E, 17–F, and 17–G, involving the theory of discovered peril, because it is asserted that there was an utter lack of competent evidence to warrant the submission of such issues or to support findings thereon.

Proposition No. 2 complains because there is no competent evidence to support the jury's finding on the theory of discovered peril.

Proposition No. 3 complains because the plaintiffs' pleading specially sets forth the acts of Stewart as failing to retard the speed of his vehicle or to stop the same after discovering the perilous situation of the deceased; and because the trial court submitted issues 17–E, 17–F, and 17–G over the objections of defendants, to the effect that the issues as framed did not confine the jury's inquiry to the specific acts or omissions that were pleaded.

We are strongly of the opinion that this case does not disclose sufficient evidence to raise the issue of discovered peril, but we feel compelled to overrule the assignments of error because of the very liberal and broad holdings heretofore made by the Supreme Court and the Commission of Appeals.

Appellant Shannon is totally blind and has been since early childhood. Mr. Horn is dead. Appellant Stewart remains the only living eyewitness to this unfortunate collision. Stewart's testimony is to the effect that he slowed down his car as he approached the said intersection; that he was traveling about 35 miles an hour until he got within about 20 feet of the said intersection, and at that time he looked up and saw Horn's truck coming toward the intersection from the north, about 50 or 60 feet from the intersection, and that he (Stewart) then cut his car to the left and was traveling at a rate of speed of about 20 or 25 miles an hour; that, when he (Stewart) reached about the center of the intersection, he saw that Horn evidently was not going to stop before he reached the intersection, and that he (Stewart) then cut his car again to the left; that Horn did not stop, but crashed into the side of Stewart's car. Stewart testified that at the time he cut his car to the left he did so to give Horn room.

■ The doctrine of discovered peril has grown out of accidents where railroads are involved. At least the overwhelming percentage of all such cases are found to be railroad cases. Some of the strongest decisions have held that the operator of a train or street car, where the view of an approaching pedestrian or the driver of an approaching vehicle is unobstructed, is not under the duty to anticipate that the pedestrian or the driver of the vehicle will come to a position of peril, but has the right to assume that such person will stop before he gets to a perilous position. Texas & N. O. Ry. Co. v. Wagner (Tex.Civ.App.) 262 S.W. 902, in which many cases, including Supreme Court opinions, are reviewed. To our way of thinking, this is a sensible and wholesome view to take of the matter. If this is sound, and undoubtedly it is, under circumstances such as we see in this record that surrounded these appellants, did not they have a right to believe that Horn would obey the plain stop signal confronting him and stop his truck before he entered the intersection? We think so. And yet we hesitate to render this case because of the many decisions in our state, some of which seem to us to be conflicting. It is evident that the doctrine of discovered peril cannot be invoked until the person is actually in a perilous position

and found to be so by the party sought to be charged, and that then it is the duty of the party sought to be charged to use ordinary care in the exercise of all of the means at hand consistent with his own safety and that of the others who may be with him, and the safety of his vehicle, if any, to avoid the injury. It is not sufficient to say that he could have discovered the perilous position of the injured party or ought to have discovered it. The negligence which may penalize him is his negligence, if any, after such discovery. If Stewart discovered that Horn was in a perilous position, the evidence here undoubtedly shows that this discovery was made after Stewart reached approximately the center of the intersection and within a very few feet, approximately 20 feet, of where the collision occurred. The truth is, as we view this record, at this particular time, common sense would dictate that Stewart then discovered that he himself and his' companion were in a perilous position. Common sense likewise leads us to the conclusion that there is no evidence in the record to show that Stewart was guilty of negligence after he reached such point in the intersection. But, as said before, in view of the many decisions, we hesitate to render this case. It will be observed that the jury found that Stewart was not keeping a proper lookout, and that he did not have his vehicle under control, just prior to the collision, and at the same time found on the issues of discovered peril against Stewart.

In Galveston, H. & S. A. Ry. Co. v. Price, 240 S.W. 524, 529, by section B of the Commission of Appeals, the following language is used:

"The specific finding of the jury, however, to the effect that those in charge of the train did not keep a lookout ahead to discover any one who might be upon the crossing and in danger of being injured, removes the issue of discovered peril from the domain of controversy; and eliminates any possible question that might otherwise be raised concerning the inference which the evidence will reasonably permit of being drawn.

"We conclude that under the undisputed evidence, aided by the findings of the jury, the plaintiff's right to recover upon any theory is negatived, and therefore that the judgments of the district court and the Court of Civil Appeals should be reversed, and judgment rendered in favor of plaintiff in error."

The Supreme Court adopted the opinion and entered the same as its judgment.

But in Northern Texas Traction Co. v. Weed, 300 S.W. 41, by section A of the Commission of Appeals, it is distinctly held that the findings of the jury that the street car motorman did not exercise ordinary care to keep a lookout and discover the automobile approaching the tracks, and that such failure was negligence and proximately caused the collision, is not inconsistent with further findings that the motorman discovered the peril of the automobile driver and failed, in the exercise of ordinary care consistent with safety, to use all means at hand to prevent the collision, and that such failure proximately caused the collision, because the motorman might have discovered the peril of the automobile driver in time to avoid the collision, although he failed to keep a proper lookout. This opinion was approved by the Supreme Court likewise.

■ We do not believe that there is any merit in the third proposition advanced.

■ Propositions 4 and 5 are as follows:

"4. The trial court should not have submitted special issue No. 17–E to the jury wherein it was asked to determine if defendant Stewart discovered the perilous situation of Horn in time so that by the exercise of ordinary care in the use of the means at hand to have avoided the collision, over the timely objections of the defendants to the effect that the issue as framed was duplicitous in that it called on the jury to find whether Stewart discovered Horn's perilous situation, if any, and then to find and measure the time element intervening after such discovery and the collision, both of which conclusions were controverted ultimate issues of fact."

"5. The trial court should not have submitted special issue No. 17–E to the jury wherein it was asked to determine if Stewart discovered the perilous situation of Horn in time so that by the exercise of ordinary care in the use of the means at hand to have avoided the collision, over the timely objections of the defendants to the effect that such issue was on the weight of the evidence and assumed from the evidence and charged the jury that Stewart did discover Horn in a perilous

1094

situation prior to the collision, which was a disputed and material controverted fact issue."

These propositions assert that issue 17–E is duplicitous, in that it called on the jury to find whether Stewart discovered Horn's perilous situation and then to find and measure the time element intervening after such discovery and collision, and that the issue is on the weight of the evidence, in that it assumed from the evidence and charged the jury that Stewart did discover Horn in a perilous situation prior to the collision. We believe that the propositions are well taken.

It will be noted that the trial court asked the jury first to find whether or not Horn was in a position of peril immediately before the collision. But the trial court did not then submit the issue of whether or not Stewart discovered Horn's peril immediately before the collision. But the trial court in issue No. 17–E has assumed that Stewart did discover Horn's perilous position and inquires then with respect to the other elements. If this issue is not on the weight of the evidence and does not assume the fact of Stewart's knowledge of Horn's perilous position, then it is undoubtedly true that the issue is duplicitous and requires the jury to answer by either "Yes" or "No" two separate and distinct controverted issues of fact, namely, whether or not Stewart discovered Horn's perilous position, and whether or not, after such discovery, Stewart could have, by the exercise of ordinary care in the use of all the means at hand consistent with his own safety and that of his companion and his vehicle, avoided the collision. We do not need to cite authorities holding that such duplicitous issue, when given, constitutes reversible error.

■ The substance of proposition 6 is that it was error on the part of the trial court to instruct the jury, in connection with the special issues on discovered peril, as to when a person discovers another in a perilous situation, and in overruling the defendants' objections, in which the defendants requested that such instructions also point out to the jury when such discovery was not made; the point being that the defendants were entitled to have the court instruct the jury that Stewart was not required to anticipate that Horn would drive his car into the inter-

section and pass by the stop sign, which was placed on the highway to control his conduct. In other words, that Stewart cannot be held to assume that Horn would commit an act of affirmative negligence, but had the right to assume that Horn would stop his truck before he reached the intersection. We believe the point is well taken and that the court should so charge the jury. Stewart undoubtedly had the right to believe that Horn would obey the stop sign, and the burden is not upon him to assume that Horn would disregard it; and assuredly Horn was not in a perilous position until after he did disregard the highway sign.

The substance of proposition No. 7 is that, the jury having found that the defendants were operating their automobile at a high rate of speed on the left hand side of the road without having the automobile under control and without keeping a proper lookout, the findings on discovered peril render the findings as a whole so inconsistent that no judgment could be entered thereon. The proposition appeals to us as being sound, but, in view of the Weed Case, supra, we do not so hold.

For the errors pointed out, the judgment of the trial court is reversed, and the cause is remanded for a new trial.