## STOVALL v. WHATLEY.

### No. 5646.

Court of Civil Appeals of Texas. Amarillo.

Oct. 2, 1944.

Rehearing Denied Oct. 30, 1944.

L. A. Wicks, of Ralls, and E. A. Watson, of Crosbyton, for appellee.

PITTS, Chief Justice.

Appellee, O. R. Whatley, instituted this suit against appellant, Roy Stovall, in Crosby County for damages in the sum of $1,575 as a result of an automobile collision between appellee's automobile driven by himself and appellant's pick-up truck driven by J. P. Simmons, which occurred at the intersection of two public roads at Broadway, a country village in Crosby County.

Appellee alleged that the driver of appellant's truck drove same at a dangerous and unsafe rate of speed which proximately caused the collision and resulted in the damages to appellee's car and in personal injuries to appellee. Appellee alleged other acts of negligence on the part of J. P. Simmons, who, he alleged, was the agent of appellant and acting within the scope of his employment at the time of the collision, but we will make reference to the other alleged acts of negligence later.

Appellant filed his plea of privilege to be sued in Dickens County, the county of his residence.

Appellee filed his controverting affidavit alleging that appellant's driver of the truck had committed affirmative acts of negligence constituting a trespass in Crosby County, which acts established venue in Crosby County under subdivision 9 of article 1995, Texas Civil Statutes.

Upon a trial of the question of venue before a jury it was agreed by stipulation between the parties that the truck in question was owned by appellant and that the driver, J. P. Simmons, was appellant's agent and was driving the truck at the time and place in question in the course and within the scope of his employment. Upon issues submitted to the jury it found that J. P. Simmons was operating the truck at the time of the collision in question at a dangerous and unsafe rate of speed under the circumstances and that such was negligence which proximately caused the collision. The jury made other findings which we will make reference to later. Upon the findings of the jury the trial court overruled appellant's plea of privilege and appellant perfected his appeal to this court.

Appellant complains in his first point of error that the evidence does not

L. D. Ratliff, Jr., of Spur, for appellant.

support the finding of the jury to the effect that appellant's driver was operating the truck at a dangerous and unsafe rate of speed under the circumstances at the time of the collision. We find numerous authorities holding that the act of driving a truck at a dangerous and unsafe rate of speed resulting in a collision that proximately causes an injury and damages is an affirmative or positive act of negligence that constitutes a trespass within the meaning of the statute and appellant seems to concede that such would be the case but contends that the evidence does not establish such a fact in the instant case.

If there was evidence of probative force to support the findings of the jury in the instant case, its findings were conclusive and binding on the trial court and are binding on this court.

The evidence shows that appellee was driving north and appellant's driver was driving east on public roads that intersected, the right of way of each road being 60 feet wide; that there was a house in the southwest corner of the intersection 30 to 50 feet from the east-west road on which appellant's driver was driving and 30 to 50 feet from the north-south road on which appellee was driving; that there was a gin and some houses for cotton pickers west of the said house on the south side of, and near the east-west road; that there was a store and filling station operated by Cecil Berry in the northwest corner of the intersection about 50 feet west of the north-south road and 50 feet north from the east-west road; that there was a house on the east side of the north-south road about 75 feet from the same and near the intersection; that the collision occurred on December 22, 1943, about 10 o'clock a. m.; that appellee approached the crossing at a rate of speed of about 25 to 30 miles per hour, looked first to the right and turned to look to the left and saw appellant's truck approaching the intersection from his left and only a few feet away; that the front of appellee's car hit appellant's truck on the right side and just behind the cab and both cars stopped on the east side of the north-south road and on the north side of the east-west road, each headed in the direction from which they respectively had come but appellant's truck was turned over; that the collision occurred a little east of the center line of the north-south road; that appellee was knocked unconscious and remained so

for some time and that some five or ten minutes after the collision J. P. Simmons, the driver of appellant's truck, went to Cecil Berry's store and phoned to somebody at Spur.

Witness, Cecil Berry, testified that he was standing inside his store near the place of the collision looking out a window and saw the colision. He testified further as follows:

"Q. * * * did you see Mr. Simmons prior to the time the accident happened, as he drove along there? A. Yes, I saw him just as he passed the door.

"Q. Well, I will ask you to state to the jury how that car, whether or not Mr. Simmons was driving rapidly or slowly, or how? A. Well, I would say he was driving pretty fast.

"Q. Did you see Mr. Whatley at the same time? A. No sir.

"Q. Which one did you see first? A. I saw Mr. Simmons.

"Q. When did you see Mr. Whatley? A. Just as they went together there at the intersection.

"Q. Did you change your position from one window to another? A. No sir.

"Q. Or anything. You just still looked out the same window? A. Yes sir.

"Q. And you saw him just as he entered the intersection or as the collision occurred? A. Saw Mr. Simmons or Mr. Whatley?

"Q. Mr. Whatley? A. Oh, I saw him just as the accident occurred.

"Q. Well, now Mr. Berry, did you see Mr. Simmons there in the store after the accident occurred? A. I did.

"Q. Did you hear him make any statements with reference to how he was driving?

\* \* \* \* \*

"A. Mr. Simmons came in and used the telephone. He called Spur and he was talking about the accident and he said he saw Mr. Whatley but thought he had time to beat him across the highway, or across the intersection.

"Q. Well, what did he say he did with reference to trying to stop, or not? A. He said that he didn't try to stop. He saw it was too late to try to stop so he tried to beat him across the intersection.

\* \* \* \* \*

"Q. Well, now did he say anything about, did you hear him say anything about

how he was driving before he reached the place? A. He said he was a little late. He was running a little late and he was driving faster than he usually drove."

On cross-examination Berry testified further:

"Q. Now, Mr. Berry, you say you saw Mr. Simmons' truck before the collision happened? A. Yes.

"Q. Now that was just as it flashed by the door there of that little store, isn't it? A. That is right.

"Q. And you didn't get what might be termed a long range view of it, or anything like that? A. No sir.

"Q. Just as it went by the door there? A. That is right.

"Q. And from that observation and that observation alone you base your estimate that he was driving fast? A. Yes.

"Q. You don't say how fast, do you? A. No sir."

Berry also testified that he went and inspected the cars and the ground where the collision occurred and saw the tracks of the cars; that appellee's car tracks showed he was traveling on his right-hand side of the road; that the tracks of the truck showed J. P. Simmons was driving "in the center of the road, might have been just a little to the left of center on his left-hand side."

There was no evidence contradicting the testimony of Cecil Berry. Appellant testified that he lived in Spur; that he was engaged in the creamery business and that J. P. Simmons was employed by him driving the truck from day to day gathering up cream among his customers; but he was not present at the time of the collision and did not attempt to throw any light on who was at fault in the matter. Appellant's driver, J. P. Simmons, did not testify and appellee was knocked unconscious by reason of the collision and testified only as to the transactions up to the time of the collision.

In the case of Jennison v. Darnielle et ux., Tex.Civ.App., 146 S.W.2d 788, 791, cited by appellant, the El Paso Court held in a case in which a "negligent rate of speed" was the issue that the nature of the act itself must be shown and the speed of the vehicle need not be shown with mathematical certainty.

■ In the case of Heard & Heard, Inc. v. Kuhnert, Tex.Civ.App., 155 S.W.2d 817, the court held that a finding of negligence because the driver of a truck was operating the same to his left of the center of the highway was an act of active negligence that constituted a trespass. In the instant case no such issue could have been properly submitted to the jury since such could not have been the proximate cause of the collision and injury. But the uncontradicted evidence showed that the truck tracks of appellant's driver indicated that he was operating his truck "in the center of the road, might have been just a little to the left of center on his left-hand side," and we think the jury was authorized to consider this testimony in connection with the issue of his driving at a dangerous and unsafe rate of speed under the circumstances.

■■ In the case of Globe Laundry v. McLean, Tex.Civ.App., 19 S.W.2d 94, 96, the court said:

"Having predicated her cause of action upon this specific act of negligence, she was under the burden of offering facts upon which this specific act could be inferred. * * *

"Appellee is entitled to every inference of negligence deducible from the facts in evidence. However, this rule requires that facts and circumstances must be in evidence from which negligence can be deduced."

We believe the above rules apply to the appellee in the instant case.

■ Numerous authorities have held that in passing upon the sufficiency of evidence to sustain a finding appellate courts must view the evidence in a light most favorable to the finding. Hughes et al. v. Bond, Tex. Civ.App., 118 S.W.2d 443; Williams & Davis Boiler & Welding Co., Inc. v. Wilder, Tex.Civ.App., 131 S.W.2d 697; Central Surety & Insurance Corporation v. Hankins, Tex.Civ.App., 140 S.W.2d 360, and authorities there cited.

We have carefully analyzed all of the testimony in the instant case, but particularly the testimony of Berry, a disinterested witness, whose testimony was not contradicted. Briefly summing up Berry's testimony, he testified to the effect that appellant's driver, J. P. Simmons, "was driving pretty fast"; that the tracks of his truck showed that he was driving in the center or a little to the left of the center of the road upon which he was traveling, and that the statements made by Simmons five or ten minutes after the collision over the telephone to somebody at Spur, as related by

Berry, were as follows: "He (Simmons) saw Mr. Whatley but thought he had time to beat him across the highway, or across the intersection. * * * He said that he didn't try to stop. He saw it was too late to try to stop so he tried to beat him across the intersection. * * * He said he was a little late. He was running a little late and he was driving faster than he usually drove."

■ We have concluded in the light of all authorities that appellee made out a prima facie case and that there is sufficient evidence of probative force to support the finding of the jury to the effect that appellant's agent was driving at a dangerous and unsafe rate of speed under the circumstances at the time of the collision and that the same was negligence and proximately caused the collision and injuries of which appellee complains. We therefore overrule appellant's first point of error.

Appellant complains in his second point of error to the effect that the trial court erred in refusing to submit to the jury the question of unavoidable accident. He contends that the question was raised by reason of the fact that the evidence showed there was a house in the southwest corner of the intersection to the left of appellee and to the right of appellant's driver as they approached the intersection that obstructed the view of both parties from each other.

■ The Commission of Appeals stated in the case of Thurman v. Chandler, 125 Tex. 34, 81 S.W.2d 489, 491, that: "An unavoidable accident is one which is not occasioned in any degree, directly or remotely, by want of due care. If the accident producing the injury could have been prevented by either party by means suggested by common prudence, it is not unavoidable."

Numerous authorities support this holding of the court.

Appellee alleged negligence on the part of appellant's driver because of his failure to stop the truck before entering the intersection after he saw appellee's car approaching him from his right and he alleged negligence also because appellant's driver failed to comply with the law that required him to yield the right of way at the intersection to appellee, who approached the intersection from the right of appellant's driver. The undisputed evidence raised both issues; they were submitted to the jury which found appellant's driver guilty of negligence on both issues and further found that each was a proximate cause of the collision. The fact that appellee pleaded such negligence on the part of appellant's driver and that the evidence showed without contradiction that by the use of common prudence appellant's driver could have prevented the collision by observing the law of the road and yielding the right of way to the car approaching the intersection from his right, convinces us that appellant's driver failed to use that degree of care that an ordinarily prudent person would have used under the same or similar circumstances.

■ The record discloses that there was a house to the right of appellant's driver as he approached the intersection but the fact that there was a building near that might obstruct his view from approaching cars from his right should have caused him to approach the intersection with more caution. There was no direct evidence that anything obstructed the view of appellant's driver from the approaching car of appellee as they approached the intersection but, assuming that the house did obstruct his view, the obstruction of one's view may not raise the issue of unavoidable accident, especially if it appears that the driver failed to use ordinary care as we have found in the instant case. Our views are supported in the following cases: Red Arrow Freight Lines, Inc. v. Smith et ux., Tex.Civ.App., 93 S.W.2d 495; Schuhmacher Co. v. Bahn, Tex.Civ.App., 78 S.W.2d 205.

We believe the trial court was justified in refusing to submit the question of unavoidable accident to the jury and we overrule appellant's second point of error.

We have carefully examined appellant's assignments of error and find no reversible error. The judgment of the trial court is therefore affirmed.