the 48th Leg., Ch. 325, Sec. 2, p. 509. (Art. 666–4(a), Vernon's Ann.P.C.)

■ The punishment provided for the offense charged is fixed in Sec. 8 of the amended act (Art. 666–41, Vernon's Ann. P.C.), at a fine of not less than $100 nor more than $1000 or by imprisonment in jail for not more than one year or by both such fine and imprisonment.

A close examination of Art. 666–4, Vernon's Ann.P.C., will reveal that Subsection (a) of said Article was passed in the Legislature as a separate Act from Subsection (c) of said Article. The Act containing Subsection (a) is found in Ch. 325, Acts of the 48th Leg., whereas Subsection (c) is found as a part of Ch. 221, Acts of the 48th Leg. These two acts were compiled by Vernon under the same article.

Appellant's motion for rehearing is overruled.

Opinion approved by the court.

## YNSFRAN et ux. v. BURKHART.

### No. 10026.

Court of Civil Appeals of Texas. Austin.
March 26, 1952.

Rehearing Denied April 16, 1952.

McKay & Avery, Charles N. Avery, Jr., and John J. McKay, all of Austin, for appellant.

Looney, Clark & Moorhead and Donald S. Thomas, all of Austin, for Henry C. Burkhart.

W. T. Williams, Jr., W. J. Hodge, Clifton Speir and Robert L. Burns, all of Austin, for City of Austin.

ARCHER, Chief Justice.

This is an appeal from an adverse judgment of the 53rd Judicial District Court of Travis County growing out of an automobile collision at an intersection in the City of Austin between an automobile driven by plaintiff, Henry C. Burkhart, in which Mrs. Annie Burkhart was an occupant, and one driven by Mrs. Carmen G. Ynsfran, wife of P. M. Ynsfran, defendants, for damages to himself and his wife. Service Fire Insurance Company sued in Burkhart's name on its subrogation. The defendants, appellants herein, as cross plaintiffs, impleaded the City of Austin, asking indemnity or contribution upon the grounds that the city was maintaining a dangerous nuisance and was negligent in several respects as concerns conditions at the intersection. The plaintiff, appellee herein, did not seek any relief against the City.

Special exceptions of the City to the cross action of appellants to the effect that the cross action failed to state a cause of action were sustained by the trial court, and the City was dismissed from the suit.

A trial was had with the aid of a jury of the original action, and based on the jury's verdict a judgment was entered in favor of plaintiff and intervenor, Service Fire Insurance Company, for damages.

The appeal is founded on thirty-one points assigned as error, and Nos. 1 to 10, inclusive, are directed to the action of the court in sustaining the City's special exceptions to appellants' amended petition in cross action, thereby holding that the City could not be held liable for personal injuries in indemnity or contribution unless the notice provision of Article XI, Section 26, of the Charter of the City of Austin had been complied with, and that the City was not negligent in maintaining the streets in a reasonably safe condition, and in dismissing the cross action of appellants as against the cross defendant, City of Austin.

This suit was instituted by Henry C. Burkhart alleging that he was driving north on Red River Street, and that Mrs. Ynsfran was traveling east on East Thirty-Second Street; that she failed to keep a proper lookout, failed to yield the right of way, ran a stop sign and collided with him, causing the injuries complained of, and sought damages against appellants. The appellants in their Second Amended Petition in cross action against the City alleged that the City had full power and control over its streets, right of ways between property and curb lines, and over its traffic signs, location and utility poles, and maintenance of all such areas.

Appellants alleged the City's exclusive control and power to abate and remove obstructions in these areas; and further alleged that the City had prohibited plant-

ings of greater height than three feet and limbs on trees lower than eight feet above the street level, and providing for fines and for removal of such obstructions. It was further alleged that Red River Street runs north and south, with a width of 60 feet, but was curbed to a width of 36 feet, leaving strips on each side; that East Thirty-Second Street runs east and west and is curbed to a width of 30 feet, leaving an area 15 feet wide on the south side. Allegations were made that at the southwest corner of the intersection of the streets that the City maintained a dangerous and hazardous condition, both on the traveled area and in such close proximity to constitute hazards to the traveling public, consisting of trees, brush, weeds, etc., and a telephone pole obstructing the view of persons traveling in this area.

Further allegations were made that Mrs. Ynsfran was not familiar with the area, was proceeding east on East Thirty-Second Street to the street intersection; that she proceeded in a careful manner, maintaining a proper lookout, close to the right-hand curb, and had reached a point where the entire area along the curb was grown up in large trees, bushes, etc. for a distance of 100–150 yards, overgrowing the entire area of the street between the curb line and the property lines at great heights, with tall limbs hanging as low as four feet above the ground, and bushes, etc. growing up to heights of 5 to 10 feet. That the intersection was obscured and visibility was obscured, and that Mrs. Ynsfran did not know, and in the exercise of ordinary care could not know that she was approaching a street intersection, which dangerous condition was permitted to exist by the City.

Defendants further plead that Mrs. Ynsfran did not know there was a stop sign on the southwest corner facing west on East Thirty-Second Street; that there was a large pole in front of the sign, and by reason of which and because of the trees and bushes the sign was not visible. Pleadings were made that when Mrs. Ynsfran reached a point about even with the stop sign she saw it and realized she was entering an intersection, applied her brakes, but,

without negligence on her part, collided with the car driven by Plaintiff.

Actual and constructive notice by the City of the dangerous condition was alleged and that the condition was a nuisance, dangerous, suffered by the City to exist for some time prior to the collision; that the City had full power to remove the obstructions and such was not done; that the nuisance was not abated and that the said condition of the street intersection was the sole proximate cause of the collision and that the City was liable therefor.

The appellants allege that Article XVI, Section 26 of the Charter, did not apply to the cross action and that they were under no obligation to give notice as required, because their rights against the City were not in the nature of claims on their part for personal injuries and that under Article 2212, Vernon's Ann.Civ.St., the City is impliedly obligated to reimburse them in indemnity and contribution. Other allegations were made that it was impossible for defendants to give the notice within thirty days of the date of the accident because they had no notice from the plaintiff within that time as to the nature, extent and kind of injuries alleged to have been suffered by plaintiffs, and that not until December 11, 1950, were they so advised; that they did give such notice within thirty days of the date it was first possible for them to give such notice.

The City by its pleading urged its special exceptions, and the court having sustained them and the cross plaintiffs declining to further amend, the court dismissed the cross action.

The special exceptions presented by the City were that the cross action attempted to state a cause of action in favor of the original plaintiffs, but fails to allege that Burkhart or anyone for him gave the notice prescribed by the Charter, and that such was an essential element of any cause of action against the City. That insofar as the cross action attempts to allege a breach of common law duty to maintain the streets in a reasonably safe condition, there was a failure to allege a breach of duty to persons traveling on the streets, or any defect

or obstruction in the improved portion of the street, or not maintained in a reasonably safe condition for travel by ordinary prudent drivers; that there was no duty on the City to remove trees and vegetation from areas between curb and lot lines, and that the pleadings do no more than to complain of the negligence of the City and its agents in the performance of governmental and police functions, for which the City is not liable. Further, the exceptions were directed to other portion of the defendants' cross action and that there is no duty imposed on the City for which it can be held liable.

The City has made seven counterpoints to the effect that the court correctly sustained the special exceptions, in the absence of any allegation that notice had been given the City of the personal injuries of the appellees, Burkharts, as required by the Charter; that there was no common burden between appellants and the City so as to create a right to indemnity; that no cause of action was alleged against the City as to negligence in maintaining the streets in a reasonably safe condition; the ordinance concerning the placing of plants higher than 3 feet above the level of the street, and other restrictions as to location and height of lower limbs of trees from the street level and the enforcement thereof, is a police ordinance and a governmental function; that the allegations concerning the failure to remove a telephone pole and natural vegetation obscuring the stop sign from view did not state a cause of action against the City; that the allegations that in permitting natural vegetation to grow on the unimproved portion of the street, the City had permitted a dangerous condition and a nuisance, did not state a cause of action against the City, because it was not shown that the City had created a nuisance; that the allegation that Mrs. Ynsfran was not familiar with the street intersection and did not know of the stop sign and entered the street on the date of the collision in question, did not state a cause of action against the City, and the collision was the result of the act of either the appellants or the appellee, or of both, in entering the intersection which was the proximate cause of the injuries to appellee.

We do not believe the pleadings in the defendants' cross action stated a cause of action against the City for which it could be held liable as to negligence in maintaining the streets involved in a reasonably safe condition for travel by an ordinarily observant person.

The complaint of negligence on the part of the City is directed at the location of a utility pole in such manner as to obstruct the view of a stop sign by persons travelling in the area, and to the permission by the City of the location of large trees and bushes that overgrew the area of the street between the curb and lot lines south of the curb, standing at heights of 20–30 feet, with limbs growing over the area, hanging as low as four feet above the ground, and other vegetation growing up to heights of 5 to 8 or 10 feet, and that this obscured the street intersection and visibility of traffic was obscured.

There were no allegations that either the appellants or appellees struck any defect, hole or obstruction in or near the streets in question.

When a street is opened the width to which it will be opened and maintained is a discretionary matter with the City. City of Waco v. Darnell, Tex.Comm.App., 35 S.W.2d 134; 39 Tex.Jur. 513, Streets, Section 4.

The owner has the right to grow trees on the sidewalk area. Southwestern Telegram & Telephone Co. v. Smithdeal, 103 Tex. 128, 124 S.W. 627.

The failure of a city to remove obstructions to view existing on an unimproved portion of the street does not constitute a breach of duty to maintain its streets. Owens v. Town of Booneville, 1949, 206 Miss. 345, 40 So.2d 158; Barton v. King County, Wash.1943, 139 P.2d 1019; Goodaile v. Board of Com'rs of Cowley County, 111 Kan. 542, 207 P. 785.

We have not been cited any Texas case determining the question of the obstruction of view to an intersection by vege-

tation, and we believe the cases cited above are directly in point, and the failure of the City to remove the obstructions to view, as alleged, from an unimproved portion of the street does not constitute negligence or a breach of duty of the City to maintain its streets.

■ We recognize the rule that in maintaining streets, the City has the duty to prevent obstructions or defects outside the travelled or improved portion of the street if its proximity thereto renders it probable that such defect will result in injury to those using the improved portion of the street in the ordinary manner, and while using due care. City of Waco v. Darnell, supra.

■ We do not believe that the action of the court in excluding defendants' Exhibit No. 1 (a part of the records concerned with Mr. and Mrs. H. C. Burkhart on file in the Brackenridge Hospital) constituted reversible error.

The defendant sought to introduce in evidence the 1948 Brackenridge City Hospital History Record on Mr. Burkhart, which, upon objection the trial court refused to admit in evidence.

This record brought forward under an exception, shows under a paragraph " 'Chief Complaint', (as of June, 1948), 'painful, swollen, stiff knee joints', * *. About a year ago, pt. (patient) began to have swelling in the ankles. This seemed to spread on up to the knees about nine months ago. They were not stiff or painful at that time. This continued to the swelling coming up in the daytime and going down at night up to about five weeks ago when the knees became painful and on occasions, stiff." The statement continued with treatments, etc.

The purpose of the tender of the record was for two purposes:

"* * * first to impeach the plaintiff, Burkhart, and second, to draw admissions from plaintiff's doctor that plaintiff was in as bad a condition two years before the accident as he was at the time of the trial, if not worse. This personal history record shows, under 'Chief Complaint', (as of June 1948),

'painful, swollen, stiff knee joints'; the record shows that the condition began 'about a year ago'; that 'five weeks ago', the knees became painful and on occasions, stiff."

The pleadings of the plaintiff admit that Mr. Burkhart "had had some trouble with arthritis prior to the occurrence of the accident, but such was not calculated to shorten his life."

The appellee, Burkhart, testified in response to questions by his attorney, as follows:

"Q. I believe you alleged in your pleading, Mr. Burkhart, that you have had some arthritis in your legs sometime before this accident happened. A. Yes, sir.

"Q. Now, the hospital records that have been introduced in evidence here show that you—that have been offered in evidence, show that you were hospitalized at Brackenridge Hospital from June 25, 1948, to June 28, 1948. Now, if those records were presented to show those dates, state whether or not that was the time that you were having that trouble. A. Yes, sir.

"Q. That was the arthritis trouble. A. Yes, sir.

"Q. You went to the hospital for that? A. Yes, sir.

"Q. Were you treated for that by some regularly licensed practicing medical doctor? A. Well, Dr. Johnson was making a test on it.

"Q. At that time that you were in the hospital? A. Yes, sir.

"Q. You were not sick; you were there for tests? A. That's right.

"Q. Did he discover that you had some arthritis? A. Well, he thought I had it.

"Q. He thought you had arthritis? A. Yes.

"Q. Did he give you some medicine to take in treating that condition? A. He gave me some medicine.

"Q. Did your condition respond to treatment? A. No, sir.

"Q. Did it get better or get worse? A. Oh, yes, it got better."

On cross-examination plaintiff further testified:

"Q. And you had this trouble, did you not? You had this trouble as early as 1948 in both of your legs? A. Only my right one.

"Q. Only your right. You didn't have any trouble in your left leg? A. No, sir.

"Q. Well to refresh your memory, I will ask you if I didn't ask you this question under oath when you were testifying under oath, sir—and I will see if I can give you the approximate date there. It was back in April of this year. 'Q. Was that trouble limited to your right leg or did you have it in both legs? A. I had it in both.

Q. You had it in both? A. Yes, sir. Q. Did that make both knees swell some? A. Yes, sir.' Now, was that your testimony? Does that refresh your memory? A. Do you mean—I want this understood. Do you mean that I—did it swell in both my knees?

"Q. Yes, sir. A. From the right knee, or did you mean did I have it both knees?

"Q. I am asking you now if as early as 1948 it isn't true that you were suffering from swelling of both of your knees and then so testified to that fact this last May. A. I had very little in my left knee.

"Q. Very little? A. Yes, sir.

"Q. You had considerable in your right knee in '48? A. Yes, sir.

"Q. As a matter of fact, sir, that trouble that you had, I believe you heretofore stated that it affected more or less other joints in your body some, to make them ache and hurt you; did it not? A. Yes, sir.

"Q. And the way that you first knew about having that trouble in your knee was when it began to hurt you; is that right? A. In my ankles.

"Q. In your ankles? A. Yes, sir.

"Q. And you began to suffer pain, is that correct, in 1948? A. Some; not much.

"Q. Well, you began to suffer enough pain and it began to bother you enough so you felt you ought to go to see a doctor about it in 1948; is that correct? A. Well, I wanted to find out what it was.

"Q. You did go to see Dr. Johnson? A. Yes, sir.

"Q. And the doctor did give you some medicine as early as 1948, did he not? A. Yes, sir.

"Q. And mentioned at that time that it was probably arthritis? A. Yes, sir.

"Q. And it made your knees stiff and sore, did it not? A. It didn't make my knees stiff, no sir.

"Q. Did it make them sore? A. A little bit; well, that swelling."

In view of the testimony of Mr. Burkhart concerning his prior illness, in which he freely admitted his prior existing infirmities, we do not believe that the defendants were materially interfered with in the examination of the physicians, since appellants' attorneys were able to cross examine the physicians fully as they had full knowledge of the records themselves and of the testimony given in connection therewith. Dr. Tisdale testified that he found evidence of pre-existing arthritis when he opened the knee for bone surgery, and that such pre-existing arthritis was contributing to the present symptoms.

■ The general rule is that absent a statute so providing, hospital records are not admissible in evidence.

Dallas Coffee & Tea Co. v. Williams, Tex.Civ.App., 45 S.W.2d 724, error dism.

There are many cases on the question of the admissibility of hospital records on the basis of Article 4478 et seq., V.A.C.S. and Article 4477, Rule 50a, V.A.C.S., but since we have concluded that the action of the court in excluding the records does not constitute reversible error we do not discuss the several cases cited by appellants herein.

Appellants' point No. 13 is that it was error for the court to permit Dr. Henry to testify that Mrs. Burkhart had given a report that she had been in an automobile accident, based on a report made to him by the Resident at the hospital.

Dr. Henry testified that Mrs. Burkhart came to his office in September, 1950, for treatment, complaining of dizziness, headache and earache, and determining that Mrs. Burkhart had a temperature all out of proportion to the findings he had made, she was sent to the hospital. On examination some irritation was found in the patient's ear, but such irritated condition could not give the temperature and prostration with which she was suffering. At the time a diagnosis of a septic infection of unknown origin, and as her condition was serious she was started on antibiotics immediately, which have the power of inhibiting the growth of bacteria.

After Mrs. Burkhart had left the hospital the doctor discussed an automobile accident with her, and she gave a report of an automobile accident and had been knocked unconscious as a result of it—a blow on the back of her head, and he arrived at the conclusion that Mrs. Burkhart's condition resulted from injuries or trauma suffered by her in the automobile accident, and that the symptoms pointed to a brain irritation—that he called meningism or early meningitis.

 We believe that the doctor could give his opinion as to the extent and cause of Mrs. Burkhart's injuries, and could relate the history of the injury given him by the patient.

McCormick & Ray, Texas Law of Evidence, Sec. 386, page 485, Sec. 394, page 497; Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170, 171.

 The court did not err in admitting plaintiffs' Exhibits Nos. 3–9, inclusive, being photographs of the intersection taken December, 1950, although the accident occurred in May, 1950.

In their answer the appellants had alleged that the stop sign was obscured by a telephone post as well as by grass, weeds and shrubs along the curb line.

The photographs were introduced for the purpose of portraying the relative positions of the telephone pole and the stop sign. The appellants' witness, City Officer Petri, testified that there was no foliage, but that the pole was in the same place then as the time of the collision.

The defendant's Exhibits Nos. 2, 3, 4, 5, and 6 were pictures made immediately after the accident, and from these it is shown that the trees, grass and shrubs did not interfere with vision of the stop sign. Dallas Ry. & Terminal Co. v. Durkee, Tex.Civ. App., 193 S.W.2d 222, error ref.; Ft. Worth & D. C. Ry. Co. v. Kiel, Tex.Civ. App., 195 S.W.2d 405; McCasland v. Henwood, Tex.Civ.App., 213 S.W.2d 555, error ref., n. r. e.

 There was no reversible error in excluding from the evidence the testimony of defendant's witness Slauson, as to the condition existing long prior to the accident.

The testimony tendered by Mr. Slauson was that about a year prior to the date of the collision in issue that he had an accident at the same intersection. Out of the presence of the jury the witness testified that as he turned off Duval on Thirty-Second Street that the trees and bushes along there are confusing; that he was driving 30 miles per hour as he approached that intersection and there were trees and bushes and undergrowth, including the telephone pole which obscured it where he could not see it until he got almost on it; and that you can't see Red River Street going up East Thirty-Second Street; that he saw a corner of the stop sign; that there were trees clear out into the street.

The evidence is convincing as to the physical conditions existing at the scene of the accident on the day of the collision as reflected by the pictures, the drawings made by Mr. Rainey, and other verbal testimony.

Mr. Slauson's knowledge of the objects and conditions claimed to have obscured the stop sign are based on observations made in 1949, about a year prior to the accident, and the witness further testified that these conditions had changed.

Complaint is made by appellants that the court erred in making a supplemental finding to the effect that the plaintiff incurred $802.00 actual, reasonable and necessary medical expenses, and in giving judgment for this sum in addition to the sum of $10,950.00 allowed by the jury for damages.

By stipulation the parties agreed that the expenses incurred by Burkhart in the treatment of his injuries were; hospital $215, X-rays $32.50, rental of hospital bed $15, wheel chair $4, Dr. Tisdale $500, Dr. Faubion $35, or a total of $802.

Appellants contend that they did not stipulate as to proximate cause, but only as to reasonableness and necessity of the medical expenses, and that the court had no right to add this sum of $802 to the judgment.

We do not believe that it was necessary for the plaintiffs to request an issue as to the element of the expenses above set out in view of the stipulation and proof. Ingle v. Nicola, Tex.Civ.App., 15 S.W.2d 129; Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

Appellants' assignments Nos. 17 and 18 are directed to the manner in which the issue of unavoidable accident was submitted.

The defendants, appellants herein, by their special issue request No. 16 filed June 28, 1951, requested the court to submit to the jury the following special issue:

" No.88,209

| | |
|---|---|
| H. C. Burkhart | In The |
| v. | 53rd District Court |
| P. M. Ynsfran | of Travis County, |
| and Wife | Texas |

Defendants Special Issue Request No. 16

To the Honorable Judge of Said Court:

Defendants, prior to the submission of the charge of the court to the jury, request the court to submit to the jury the following special issue:

Special Issue No. ———

Do you find from a preponderance of the evidence that the collision in question was not the result of an unavoidable accident?

In connection with this special issue you are instructed as follows:

By 'unavoidable accident' is meant an occurrence or accident which happened without negligence on the part of plaintiff, H. C. Burkhart, or on the part of defendant, Mrs. P. M. Ynsfran.

You are further instructed that in the event your findings in response to this special issue, is in the affirmative, the form of your answer should be 'It was not an unavoidable accident'; and that otherwise your answer should be 'No'.

Answer ———
McKay & Avery
By s/ John J. McKay
Attorneys for De-
. fendants

Given
(Correction made in ink.)

s/ J. Harris Gardner
Judge, 53rd District
Court

(Endorsed) Filed in the 53 District Court of Travis County, Texas at 1:45 P. M. June 28, 1951. O. T. Martin, Jr., District Clerk. By Robert R. Ott, Deputy."

It is noted that this issue was given, and we presume read to the jury along with the main charge, since no exception is brought forward complaining of any act in failing to read the issue.

Certain objections were lodged at the manner in which an issue was submitted in the main charge, to the effect that the burden of proof was misplaced.

We do not believe that the evidence raised the issue that the collision in question was the result of an unavoidable accident, but on the contrary was proximately caused by acts of negligence of Mrs. Ynsfran in failing to stop at the stop sign, in failing to yield the right of way, and in failing to keep a proper lookout. The witness, Mrs. Ynsfran, testified that she did not see the stop sign until she was about even with it; that she thought there was shrubbery that obscured her vision of the stop sign; that she was trying to read the street sign on the other side of the street,

across the intersection. She further testified she did not know Red River Street was there until she saw the stop sign.

Certain pictures taken by Mr. Ynsfran at the time of the accident depict the intersections of the streets, and in all of them the stop sign is legible and visible by a person travelling East on Thirty-Second Street in the vicinity of the street crossing.

In answer to issues submitted to it the jury found that the stop sign was sufficiently visible and legible to be seen by an ordinarily observant person, and that the failure of Mrs. Ynsfran to bring her automobile to a complete stop before entering the intersection was a proximate cause of the collision. Further findings were made that Mrs. Ynsfran failed to keep a proper lookout, and that such failure was a proximate cause of the collision. Horne Motors, Inc., v. Latimer, Tex.Civ.App., 148 S.W.2d 1000, error dism.; Stovall v. Whatley, Tex.Civ.App., 183 S.W.2d 672; Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790; Gulf, Colorado & Santa Fe Ry. Co. v. Smart, Tex.Civ.App., 222 S.W.2d 161, error ref., n.r.e.

Appellants' assignments Nos. 19 and 20 are directed to the error of the court in submitting to the jury the element of damages sustained by H. C. Burkhart on account of future diminished earning capacity, in that the court failed to instruct the jury to limit its consideration to such future incapacity or damages as would reasonably and probably occur, and in like manner concerning Mrs. Burkhart.

The court charged the jury on damages as to further diminished capacity of Mr. Burkhart as follows:

"What sum of money if paid now in cash, if any, do you find from a preponderance of the evidence will fairly and reasonably compensate the plaintiff, H. C. Burkhart, for his injuries, if any, taking into consideration the following elements of damage, if any, and none other:

"Physical pain and suffering suffered by the plaintiff from the time of the collision down to the date of this trial and directly and proximately resulting from the collision in question, if any.

"Physical pain and suffering which the plaintiff, H. C. Burkhart, will in reasonable probability suffer in the future beyond the date of this trial as a direct and proximate result of the collision in question, if any.

"Mental suffering suffered by the plaintiff, H. C. Burkhart, from the date of the collision in question down to the date of this trial as a direct and proximate result of the collision in question, if any.

"The reasonable cash value of lost earnings from the date of the collision in question down to the date of the trial hereof, if any.

"The reasonable present cash value of the diminished capacity of H. C. Burkhart to labor and earn money in the future beyond the date of the trial, if any, directly and proximately resulting from the collision in question.

Similar instruction was given as to Mrs. Burkhart.

The objections were that the words "Will in reasonable probability sustain in the future" were omitted from the instructions, following issue No. 16.

On the issue of damages the court gave special instructions as follows:

"In connection with your answer to the foregoing question, you are instructed as follows: You will not allow any sum of money for the physical pain and mental suffering, if any, either past or future, nor for medical, surgical and hospital expenses, if any, either past or future, nor for loss of earnings, if any, in the past, nor for such loss of earnings, if any, as plaintiff H. C. Burkhart in reasonable probability will lose in the future because of diminished capacity to work and earn money in the future, if any, on account of the condition and disease, if any, which may have existed in plaintiff prior to the injuries, if any, received by him on May 17, 1950, except in so far as that condition and disease may have been aggravated by the injuries,

if any, sustained by plaintiff H. C. Burkhart on May 17, 1950."

Similar issues and like instructions· were given with respect to the injuries to Mrs. Burkhart.

 We believe that the instructions given by the court meet the requirements as set out in Fisher ·v. Coastal Transport Co., Tex., 230 S.W.2d 522, and that the vital element of reasonable probability was included. See Air Line Motor Coaches v. Guidry, Tex.Civ.App., 241 S.W.2d 203, for a further discussion of this question.

We have considered all of the authorities and cases cited by appellants but conclude that there were no reversible errors in the manner in which the issues were submitted, taking into consideration the entire instructions given.

Appellants' points Nos. 21 to 26, inclusive, are grouped and are directed to the error of the court in submitting the question of past injuries and pain suffered by Mrs. Burkhart, because there was insufficient evidence to support a jury finding of such injuries on account of· the negligence of defendant; or as to future pain and suffering of Mrs. Burkhart; and in submitting the question of damages sustained on account of lost earnings of Mrs. Burkhart, because the court failed to limit the jury to a consideration of ·such lost, earnings, directly and proximately resulting from the negligence of defendant, and that there was insufficient evidence on the question of the future impairment of earning capacity of Mrs. Burkhart to enable the jury to form an intelligent answer, and that there was no evidence to warrant the submission of this element of damages to the jury, and finally that the jury's verdict of $8,300 is excessive.

 We believe the jury's findings are reasonably supported by the· evidence and that there was no reversible error in the court's charge with respect to the damages and injuries concerning Mrs. Burkhart.

The testimony of Mr. Burkhart is that Mrs. Burkhart complains of her head hurting, difficulty in hearing and sleeping. Mrs. Burkhart testified that prior to the accident she was in good health, not nervous or ever had high fever or ear trouble, that she feels bad, and has to take empirins to stay on her job.

Mrs.· Burkhart was thrown from the car on the street, and that was the first she knew. Injuries were to her whole left side of her body and her right leg was bruised. She testified that she refused to go. to bed, and had a ·fever of 103 degrees.

In September she had to go to the hospital, and testified:

"Well, I kept having those head aches and a very· heavy feeling. in my head, and finally it just got so severe that one ear I thought I had the ear ache; then by the time I got home both ears were hurting; I couldn't tell what it was, and the next morning I was in such severe pain, I still thought it was an earache, so I went to Dr. Miears and he treated me and I went back home and I don't remember too much what happened from then for about four or five days. I was in the hospital when I realized where I was at, and Dr. Henry was treating me then."

At the hospital Mrs. Burkhart was treated by Dr. Henry, who testified that ringing, popping and· roaring of the ears was a symtom of brain injury.

Dr. Suehs, a witness called by the defendants, examined Mrs. Burkhart and testified that she had a thirty per cent hearing loss of the nerve type in the left ear and a twenty per cent hearing loss of a mixed type in the right ear,. this, in the opinion of Dr. Suehs, seemed to have resulted from the illness for which Mrs. Burkhart was hospitalized in September, 1950; but that meningitis could be caused from a trauma.

Dr. Henry testified as to his examination and treatment of Mrs. Burkhart, and that in his opinion the illness in September was caused by .the trauma she had suffered in the .car collision, and that a study of the subjects of meningitis or meningisma produced by trauma that the condition .had occurred a number of years after the injury and he did not think that a ·period of time of six or eight months lapsing between the

injury and the disability effect could be considered as disproving the cause of the condition.

 The evidence as a whole of future damage was sufficient to submit the issue to the jury.

The testimony of Dr. Suehs was that if Mrs. Burkhart had been having headaches, nervousness, popping and roaring in her ears as long as she testified she had, that she would probably have them for many years, but should get better gradually.

Mrs. Burkhart testified that she did not feel like working, and was not able to work, but she had to work to help make a living.

 It is not necessary to show an actual loss of earnings in order to prove future diminished earning capacity, the loss of the capacity to earn is the criterion. McIver v. Gloria, 140 Tex. 566, 169 S.W. 2d 710.

 We do not believe, in the light of the evidence and the jury's findings, that we are justified in saying the sum of $8,300 awarded for Mrs. Burkhart's damages is excessive. El Paso City Lines, Inc., v. Harris, Tex.Civ.App., 233 S.W.2d 620; Kimbriel Produce Co., Inc., v. Webster, Tex.Civ.App., 185 S.W.2d 198.

 The appellants requested an issue inquiring if Mr. Burkhart was negligent in failing to apply his brakes, which was refused by the court.

We do not think the evidence raised this issue.

Burkhart testified that he was travelling at a rate of speed of twenty-five miles per hour as he entered the intersection; that he did not see Mrs. Ynsfran's car until she hit him. The testimony is that Mrs. Ynsfran was driving at a speed of thirty miles per hour as she came up to the intersection, and that she did not stop at the stop sign, but continued and hit the Burkhart car with sufficient force to knock it broadside upon the curb at the northeast corner of the intersection. Burkhart testified that he knew there was a stop sign on Thirty-Second Street and presumed cars coming on Thirty-Second Street would stop for it.

Issues were submitted as to Burkhart's speed, failure to blow his horn and to yield the right of way to Mrs. Ynsfran, the jury, answered these issues favorable to Burkhart, and a failure to apply his brakes would not have been negligence, unless he had seen the Ynsfran car in time as to have prevented the accident by applying his brakes. Shannon v. Horn, Tex.Civ.App., 92 S.W.2d 1090, error dism.

 We do not believe that the doctrine of sudden emergency or imminent peril is in this case, since it is applicable only for the purpose of lessening the standard of conduct of a party after an emergency has arisen.

 No issue was submitted inquiring as to Mrs. Ynsfran's conduct after she entered the intersection, and the doctrine is not applicable to a case of failing to stop, keeping a proper lookout, or to yield the right of way. Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545 (Tex.Com.App.).

 Points Nos. 29, 30, and 31 are directed to the failure of the court to give as a part of the charge on proximate cause, a definition of "new and independent cause," and in refusing to submit an issue inquiring whether the condition at the intersection so obscured Mrs. Ynsfran's vision as to be a new and independent cause. The evidence does not raise the issue of any "new and independent cause."

The jury found that the stop sign was not so obscured as to render it legible and visible by an ordinarily observant person traveling east on East Thirty-Second Street. Lawrimore v. Sanders, 129 Tex. 563, 103 S.W.2d 739 (Tex.Com.App.).

This case has been well and extensively briefed and many authorities have been cited to all of which we have given careful consideration but cannot discuss them without extending this already overlong opinion.

The judgment of the trial court is affirmed.

Affirmed.